## IN THE UNITED STATES DISTRICT
## COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NAJI MOHAMMAD, individually and as Administratix of the ESTATE of HAKIM JACKSON, Deceased** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION** |
| | : | |
| **PENNSYLVANIA STATE POLICE,** | : | **NO. _____** |
| | : | |
| **JOHN DOE PENNSYLVANIA STATE POLICE OFFICERS, in their individual and official capacities,** | : | |
| | : | |
| **COUNTY OF DELAWARE, PA,** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **JOHN DOE COUNTY OF DELAWARE POLICE OFFICERS, in their individual and official capacities,** | : | |
| | : | |
| **TOWNSHIP OF TINICUM,** | : | |
| | : | |
| **JOHN DOE TOWNSHIP OF TINICUM POLICE OFFICERS, in their individual and official capacities,** | : | |
| | : | |
| **CROZER-CHESTER MEDICAL CENTER** | : | |
| | : | |
| **KRISTIN VARACALLI, DO** | : | |
| | : | |
| **JOHN DOE ATTENDING PHYSICIAN** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

Plaintiff, NAJI MOHAMMAD, individually and as Administratix of the ESTATE OF

HAKIM JACKSON, by and through his counsel, Tucker Law Group, LLC, and, by way of

Complaint against the above-named Defendants upon causes of action, hereby

complains and avers as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. §§ 1331 and 1343, in that it raises questions of federal law,

pursuant to the United States Constitution and other federal laws governing civil rights,

including 42 U.S.C. §§ 1983 and 1988.

2.      This Court has supplemental jurisdiction over the related common-law and

state-law claims raised pursuant to 28 U.S.C. § 1367.

3.      Venue in the Eastern District of Pennsylvania is proper pursuant to 28

U.S.C. § 1391 in so far as the following alleged unlawful conduct that forms the factual

and legal bases of this Complaint occurred within the geographical limits of this District.

## PARTIES

4.      Plaintiff Naji Mohammad is an adult individual who resides at 2205 E.

Washington Lane, Philadelphia, PA 19138 and is the Administratix of the Estate of

Hakim Jackson ("Hakim Jackson" or "Decedent"), as appointed by Ronald R. Donatucci,

Register for the Probate of Wills and Grant of Letters Testamentary and of

Administration for the County of Philadelphia in the Commonwealth of Pennsylvania.

5.      The defendant Pennsylvania State Police (hereafter "PA State Police") is a

duly authorized agency of the Commonwealth of Pennsylvania with an office in

Delaware County at 1342 W. Baltimore Pike, Media, Pennsylvania 19063.

6.      The defendants John Doe Pennsylvania State Police Officers (hereafter

"John Doe State Officers") are currently unknown Pennsylvania State Police Officers

who are being sued individually and in their official capacities and who, at all times relevant hereto, were serving in their capacity as Pennsylvania State Police Officers, acting in the course and scope of their employment and acting under the color of state law. Plaintiff reserves the right to amend this Complaint to add the identities of said Officers when their identities become known.

7.     At all material times, the PA State Police was charged with the responsibility of testing, hiring, training, and supervising members of the Pennsylvania State Police Department, including, in particular, John Doe State Officers.

8.     The defendant County of Delaware, PA (hereafter "Delaware County") is a County of the Commonwealth of Pennsylvania with a principal business address of 201 West Front Street, Media, Pennsylvania 19063.

9.     The defendants John Doe County of Delaware Police Officers (hereafter "John Doe Delaware Co. Officers") are currently unknown County of Delaware Police Officers who are being sued individually and in their official capacities and who, at all times relevant hereto, were serving in their capacity as County of Delaware Police Officers, acting in the course and scope of their employment and acting under the color of state law. Plaintiff reserves the right to amend this Complaint to add the identities of said officers when their identities become known.

10.     At all material times, Delaware County was charged with the responsibility of testing, hiring, training, and supervising members of the County of Delaware Police Department, including, in particular, John Doe Delaware Co. Officers.

11.     The defendant Township of Tinicum (hereafter "Tinicum Township") is a Township located in Delaware County Pennsylvania with a principal business address of 629 North Governor Printz Blvd, Essington, Pennsylvania 19029.

12.     The defendants John Doe Township of Tinicum Police Officers (hereafter "John Doe Tinicum Officers") are currently unknown Township of Tinicum Police Officers who are being sued individually and in their official capacities and who, at all times relevant hereto, were serving in their capacity as Township of Tinicum Police Officers, acting in the course and scope of their employment and acting under the color of state law.  Plaintiff reserves the right to amend this Complaint to add the identities of said officers when their identities become known.

13.     At all material times, Tinicum Township was charged with the responsibility of testing, hiring, training, and supervising members of the Township of Tinicum Police Department, including, in particular, John Doe Tinicum Officers.

14.     Upon information and belief, the defendant Kristin Varacalli, DO (hereafter, "Dr. Varacalli") at all times relevant hereto, was a resident and/or intern at Crozer Chester Medical Center, having begun her program on July 1, 2009.  Upon information and belief, at all times relevant hereto, Dr. Varacalli was an individual authorized to practice medicine in the Commonwealth of Pennsylvania.  At all times relevant hereto, Dr. Varacalli rendered medical services at One Medical Center Boulevard, Upland, Pennsylvania, 19013.  Plaintiff is asserting a professional liability claim against this defendant.

15.     At all times relevant hereto, Dr. Varacalli was acting individually and/or by and through her actual, apparent and/or ostensible agents, servants and employees, all

of whom were acting within the course and scope of their agency, service and employment, and all of whom participated in or were involved in the care and treatment of Hakim Jackson.

16.    Upon information and belief, the defendant John Doe Attending Physician (hereafter, "John Doe Attending") is, and was at all times relevant hereto, an individual licensed to practice medicine in the Commonwealth of Pennsylvania. At all times relevant hereto, John Doe Attending rendered medical services at One Medical Center Boulevard, Upland, Pennsylvania, 19013. John Doe Attending is currently unknown and Plaintiff reserves the right to amend this Complaint to add the identity of John Doe Attending when his or her identity becomes known. Plaintiff is asserting a professional liability claim against this defendant.

17.    At all times relevant hereto, John Doe Attending was acting individually and/or by and through his or her actual, apparent and/or ostensible agents, servants and employees, all of whom were acting within the course and scope of their agency, service and employment, and all of whom participated in or were involved in the care and treatment of Hakim Jackson.

18.    The defendant Crozer-Chester Medical Center (hereafter, "Crozer-Chester") is, and was at all times relevant hereto, a healthcare corporation organized and existing under the laws of the Commonwealth of Pennsylvania. At all times relevant hereto, Crozer-Chester rendered medical services at One Medical Center Boulevard, Upland, Pennsylvania, 19013. Plaintiff is asserting a professional liability claim against this defendant.

19.      At all times relevant hereto, Crozer-Chester was acting by and through its actual, apparent and/or ostensible agents, servants and employees, including Dr. Varacalli and John Doe Attending, all of whom were acting within the course and scope of their agency, service and employment, and all of whom participated in or were involved in the care and treatment of Hakim Jackson.

## FACTUAL ALLEGATIONS

**Defendant Police Officers Unlawfully Arrested, Seized and Assaulted Hakim Jackson**

20.      On August 14, 2009, Hakim Jackson was a passenger in a vehicle that was involved in a traffic stop in the area of the John Heinz National Wildlife Refuge located in Tinicum Township.

21.      Upon information and belief, the traffic stop was initiated by John Doe State Officers.

22.      Hakim Jackson was generally in good health and was uninjured at the time of the traffic stop.

23.      At some point during the traffic stop, John Doe Delaware Co. Officers and John Doe Tinicum Officers joined John Doe State Officers and assisted John Doe State Officers in arresting, detaining and seizing Hakim Jackson.

24.      The arrest, detention and seizure of Hakim Jackson by John Doe State Officers, John Doe Delaware Co. Officers and John Doe Tinicum Officers (collectively, "Defendant Police Officers") was unlawful and without probable cause or justification.

25.      Before, during, and after arresting, detaining and seizing Hakim Jackson, Defendant Police Officers intentionally and with malice aforethought and reckless indifference to the rights and safety of Hakim Jackson, attacked, struck, punched,

bludgeoned, choked, beat, dragged, repeatedly shocked with a Taser (at least five (5) times), and otherwise severely injured Hakim Jackson.

26.    The beating and injuries incurred by Hakim Jackson by Defendant Police Officers was unprovoked, unlawful, and without probable cause or justification.

27.    The beating incurred by Hakim Jackson by Defendant Police Officers caused indivisible injuries to Hakim Jackson as they were caused by multiple blows, strikes, and actions by multiple police officers.

**Crozer-Chester Allows Defendant Police Officers to Dictate their Course of Medical Treatment of Hakim Jackson**

28.    Sometime later, and as a result of the severe injuries inflicted by Defendant Police Officers, Defendant Police Officers transported Hakim Jackson to Crozer-Chester.

29.    Hakim Jackson was taken to the Crozer-Chester Emergency Room by Defendant Police Officers at approximately 7:00 p.m. on August 14, 2009.  He was covered in mud and under arrest.

30.    Medical personnel noted that Hakim Jackson had abrasions all over his body and that his right shoulder was eccymotic and swollen.

31.    It was also noted that Hakim Jackson had Taser marks on the back of his right shoulder, and on his mid and lower back, with hematomas at each Taser site. Additionally, Hakim Jackson had a right forehead abrasion.

32.    Due to the severity of Hakim Jackson's condition, he was admitted to the medical intensive care unit ("MICU") on August 15 at approximately 2:40 a.m.  Hakim Jackson was in critical condition, suffering from a rapid breakdown of muscle fibers known as  rhabdomyolysis and acute renal failure.

7

33.     While in the MICU, Hakim Jackson required massive amounts IV fluids and blood transfusions.

34.     Despite treatment, Hakim Jackson's laboratory results remained highly abnormal with evidence of massive muscle breakdown.

35.     Defendant Police Officers stationed themselves at the bedside of Hakim Jackson throughout his hospitalization and attempted to influence and dictate the medical treatment of Hakim Jackson.

36.     On the morning of August 15, 2009, Crozer-Chester medical personnel heavily sedated Hakim Jackson by administrating Fentanyl and Ativan.

37.     Shortly thereafter, Defendant Police Officers told Crozer-Chester medical personnel that a Judge was on his way to Crozer-Chester to conduct a bedside arraignment and, therefore, Hakim Jackson need to be awakened.

38.     Dr. Varacalli complied with Defendant  Police Officer' request and approved the reversal of Hakim Jackson's sedation and ordered that he be administered Narcan and Flumazenil.

39.     Under Dr. Varacalli's orders, medical personnel administered four doses of Narcan and five doses of Flumazenil between 11:15 a.m. and 11:28 a.m.

40.     Hakim Jackson then experienced rises in heart rate and blood pressure so dramatic that they constituted signs of impending death.  Specifically, his heart rate rose from 61 to 117 and his blood pressure increased from 157/99 to 224/96.

41.     A decision was then made to intubate Hakim Jackson with anesthesia. Hakim Jackson became hypertensive and tachycardic, his breathing became irregular,

gurgling was heard and no gag was noted. Additionally, his pupils were fixed and dilated – additional signs of impending death.

42.     After intubation, Hakim Jackson was again sedated with Fentanyl and Ativan drips.

43.     Hakim Jackson's condition continued to deteriorate. Later in the day on August 15, 2009, a CT of Hakim Jackson's head revealed a brainstem herniation and hydrocephalus in conjunction with areas of extra-axial hemorrhage.

44.     At 1:32 a.m. on August 16, 2009, a chest x-ray of Hakim Jackson revealed complications consistent with a collapsed right lung. Four hours later, another chest x-ray revealed a persistent collapse of the right lung and left lung pulmonary edema.

45.     At 4:35 a.m., a code 99 was called. CPR was performed on Hakim Jackson without success.

46.     Hakim Jackson was thirty (30) years old at the time of his death.

47.     The significant physical trauma incurred by Hakim Jackson due to the actions of Defendant Police Officers was a substantial factor in causing Hakim Jackson's death.

**The Actions Of The State Actors Deprived Hakim Jackson of His Rights and Privileges**

48.     Hakim Jackson remained in police custody from the time of his arrest until the time of this death, with an Officer stationed at his bedside until his death.

49.     Defendant Police Officers conspired with each other to cover-up their severe beating and abuse of Hakim Jackson by attempting to interfere with the medical treatment of Hakim Jackson.

50.        Defendant Police Officers did interfere with the medical treatment of Hakim Jackson by falsely telling Crozer-Chester doctors and medical personnel that Hakim Jackson ingested bags of cocaine prior to his arrest, thereby attempting to deceive doctors and medical personnel-about the cause of Hakim Jackson's injuries.

51.        However, while still alive, Hakim Jackson vehemently denied to Crozer-Chester Medical Center doctors and medical personnel that he ingested bags of cocaine.

52.        The medical records prove that Hakim Jackson did not ingest bags of cocaine, as the level of cocaine found in his body was not indicative of ingesting bags of cocaine, but was consistent with Hakim Jackson's report of using cocaine the day before his arrest.

53.        The medical records also prove that Hakim Jackson was severely beaten and abused while in the custody of Defendant Police Officers.

54.         An autopsy performed on Hakim Jackson showed extensive hemorrhage in the neck muscles down to the level of Hakim Jackson's voice box and bite marks on his tongue, indicative of Hakim Jackson being choked.

55.        The autopsy also showed that the only areas on Hakim Jackson without significant trauma were below his knees.

56.        Importantly, the autopsy failed to reveal any cocaine bags.

57.        Defendant Police Officers' application of unwarranted, unlawful and excessive force and violence upon Hakim Jackson while he was in the custody of Defendant Police Officers, caused Hakim Jackson's injuries and ultimate death.

58.     Additionally, PA State Police, Delaware County and Tinicum Township failed and continue to fail to provide adequate training to ensure that their police officers do not use excessive force when arresting individuals.

59.     PA State Police, Delaware County and Tinicum Township failed and continue to fail to provide adequate training to ensure that their police officers do not engage in lethal behavior such as severely beating and abusing individuals without cause or justification.

60.     PA State Police, Delaware County and Tinicum Township lacked and continue to lack sufficient safeguards to prevent police officers such as Defendant Police Officers from using excessive force when arresting individuals.

61.     PA State Police, Delaware County and Tinicum Township lacked and continue to lack sufficient safeguards to prevent police officers such as Defendant Police Officers from engaging in lethal behavior such as severely beating and abusing individuals without cause or justification.

62.     PA State Police, Delaware County and Tinicum Township, through their lack of sufficient supervision, have created and fostered an environment that encourages their individual police officers to use excessive force when arresting individuals.

63.     PA State Police, Delaware County and Tinicum Township, through their lack of sufficient supervision, have created and fostered an environment that encourages their individual police officers to engage in lethal behavior such as severely beating and abusing individuals without cause or justification.

64.     As a direct and proximate result of the conduct of Defendant Police Officers, PA State Police, Delaware County and Tinicum Township, Hakim Jackson was deprived of rights and privileges secured to him by the U.S. Constitution, Pennsylvania Constitution and federal and state law.

**Crozer-Chester And Its Agents, Servants and Employees Were Negligent and Careless In Their Treatment of Hakim Jackson**

65.     Dr. Varacalli's decision to reverse Hakim Jackson's sedation served no medical purpose whatsoever, but was done because Defendant Police Officers stated that an arraignment needed to be conducted.

66.     Reversing a patient's sedation should be done for medical purposes only if health care providers believe the benefit of reversal is greater than the risk.

67.     Reversing Hakim Jackson's sedation for the purpose of an arraignment would be futile because a patient in Hakim Jackson's condition at the time would be too ill to understand the charges against him.

68.     Dr. Varacalli did not consider the risks to Hakim Jackson before ordering the reversal of his sedation.

69.     Dr. Varacalli should have known that the risk of reversing Hakim Jackson's sedation far outweighed any medical benefit to keeping him sedated giving his condition at the time she made the order.

70.     As a direct and proximate result of the negligence and carelessness of Dr. Varacalli, Hakim Jackson's condition worsened, causing him to suffer serious physical injuries and damages.

71.     As an intern who on August 15, 2009 had only six (6) weeks of experience working as an intern, Dr. Varacalli should not have made such a complicated decision

on her own, but instead the decision should have been made in consultation with John Doe Attending.

72.      The Crozer-Chester medical records do not show any documentation by John Doe Attending regarding the care of Hakim Jackson.

73.      John Doe Attending should have been more involved in the care of Hakim Jackson, should have supervised Dr. Varacalli more carefully and should have been consulted regarding the reversal of Hakim Jackson's sedation.  Moreover, John Doe Attending Physician should have been required to document his involvement in Hakim Jackson's care.

74.      John Doe Attending's failure to properly supervise Dr. Varacalli and failure to participate more in the care of Hakim Jackson was careless and negligent.

75.      As a direct and proximate result of John Doe Attending's negligence and carelessness, Hakim Jackson's sedation was reversed, causing him to suffer serious physical injuries and damages.

76.      Crozer-Chester owed a duty to Hakim Jackson to ensure his safety and well being while Hakim Jackson was under the care of Crozer-Chester.

77.      Crozer-Chester individually and through its agents, servants, and/or employees, including Dr. Varacalli and John Doe Attending, breached its duty of care owed to Hakim Jackson both generally and in the following particular respects:

   a. failing to adhere to the proper standard of care in the overall treatment of Hakim Jackson;

   b. failing to recognize that the risk of reversing Hakim Jackson's sedation far outweighed the benefit to Hakim Jackson, especially given his condition at the time the decision was made;

   c. failing to recognize that reversing Hakim Jackson's sedation served no

medical purpose;

   d.  failing to select and retain only competent physicians and medical personnel;

   e.  failing to formulate, adopt, and enforce adequate rules and policies to ensure quality of care for its patients;

   f.  failing to implement policies and procedures to adequately address and resist attempts by law enforcement to influence the treatment of patients;

   g.  failing to properly train its agents, servants, employees and/or medical personnel to adequately address and resist attempts by law enforcement to influence the treatment of patients;

   h.  failing to implement and monitor policies and procedure regarding adequate record documentation by attending physicians;

   i.  failing to oversee all persons who practice medicine within its walls as to patient care;

   j.  failing to properly train its attending physicians to properly supervise interns to prevent them from making harmful decisions.

78.     Crozer-Chester knew or should have known that it breached its duties of care owed to Hakim Jackson as it was obvious that the reversal of Hakim Jackson's sedation served no medical purpose but instead was done at the direction of Defendant Police Officers even though Hakim Jackson would be too ill to understand the charges against him.

79.     Crozer-Chester knew or should have known that it breached its duties of care owed to Hakim Jackson as it allowed interns to make medical decisions without proper supervision.

80.     As a direct and proximate result of Defendant Crozer-Chester's negligence and carelessness, Hakim Jackson's sedation was reversed, causing him to suffer serious harm and damages.

## COUNT I – CONSPIRACY 42 U.S.C. § 1983
### (Plaintiff v. Defendant Police Officers)

81.        Plaintiff hereby incorporates by reference Paragraphs 1 through 80 as if set forth in their entirety.

82.        Defendant Police Officers acted under the color of state law and were state actors at all times relevant to the matters complained of herein.

83.        As detailed above, Defendant Police Officers, for illegal and unconstitutional reasons, entered into a conspiracy to violate the Decedent's Fourth Amendment right to be free from excessive force.

84.        As detailed above, Defendant Police Officers performed overt acts in furtherance of the conspiracy, including but not limited to, reaching an agreement or meeting of the minds to subject Decedent to excessive force and attempt to conceal amount of force exerted by interfering with the medical treatment given to Decedent.

85.        As detailed above, the conspiracy directly and proximately resulted in harm to Decedent, including the deprivation of his rights and privileges under the Constitution of the United States the Constitution.

86.        As a direct and proximate result of the malicious, intentional and/or reckless actions of Defendant Police Officers, Decedent suffered the injuries and death described above.

87.        The actions of Defendant Police Officers, in conspiring to deprive Decedent of his rights under the U.S. Constitution, were so intentional, negligent, recklessly indifferent, willful, wanton, malicious and outrageous that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant Police Officers and grant him all appropriate relief, including, but not limited to, compensatory damages, punitive damages, court costs, attorney fees and all other relief as it deems appropriate under 42 U.S.C. §§ 1983, 1988 and under Pennsylvania law.

**COUNT II – EXCESSIVE FORCE 42 U.S.C. §§ 1983**
**(Plaintiff v. Defendant Police Officers)**

88.     Plaintiff hereby incorporates by reference Paragraphs 1 through 87 as if set forth in their entirety.

89.     Defendant Police Officers acted under the color of state law and were state actors at all times relevant to the matters complained of herein.

90.     Defendant Police Officers deprived Decedent of his rights and privileges secured under the Fourth and Fourteenth Amendments to the U.S. Constitution, which guarantees his right to be secure from unreasonable searches and seizures and the right to due process of the law.

91.     Decedent's injuries and damages were a direct and proximate result of the conduct of Defendant Police Officers as follows:

     a. arresting, detaining and seizing Decedent without probable cause or justification;

     b. subjecting Decedent to a severe physical beating, including striking, punching, bludgeoning, choking, beating, and dragging Decedent under circumstances that did not justify the application of force;

     c. subjecting Decedent to multiple and unnecessary electric shocks by a Taser;

     d. using excessive force that was not justified by Decedent's behavior;

     e. conspiring to violate Decedent's right to be free from excessive force;

    f.   conspiring to interfere with the medical treatment given to Decedent;

    g.   interfering with the medical treatment given to Decedent.

92.      The actions of Defendant Police Officers were not objectively reasonable under the facts and circumstances as set forth herein.

93.      The application of force applied by Defendant Police Officers was excessive, inappropriate and without probable cause or justification.

94.      The force used by Defendant Police Officers was not applied in a good faith effort to maintain and/or restore discipline or control.

95.      The Defendant Police Officers' application of unwarranted, unlawful and excessive force and violence upon Decedent, while in the custody of Defendant Police Officers, caused Decedent's injuries and death.

96.      The actions of Defendant Police Officers, in depriving Decedent of his rights under the U.S. Constitution, were so intentional, negligent, recklessly indifferent, willful, wanton, malicious and outrageous that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant Police Officers and grant him all appropriate relief, including, but not limited to, compensatory damages, punitive damages, court costs, attorney fees and all other relief as it deems appropriate under 42 U.S.C. §§ 1983, 1988 and under Pennsylvania law.

## COUNT III – BYSTANDER LIABILITY 42 U.S.C. § 1983
### (Plaintiff v. Defendant Police Officers)

97.      Plaintiff hereby incorporates by reference Paragraphs 1 through 96 as if set forth in their entirety.

98.      Defendant Police Officers were present at and participated in the illegal and unconstitutional use of excessive force upon Decedent.

99.      Defendant Police Officers had a duty to intervene and stop or prevent the unconstitutional use of excessive force upon Decedent.

100.      Defendant Police Officers had time to intervene and stop or prevent the unconstitutional use of excessive force upon Decedent, but failed to so act.

101.      Defendant Police Officers' failure to act to intervene and stop or prevent the unconstitutional excessive force applied on Decedent was the direct and proximate cause of the Decedent being illegally and unconstitutionally assaulted.

102.      As detailed above, the failure of Defendant Police Officers to intervene and stop, or prevent, the unconstitutional assault and battery of the Decedent directly and proximately resulted in harm to Decedent, including the deprivation of his rights and privileges under the Constitution of the United States.

103.      As a direct and proximate result of the malicious, intentional and reckless actions of Defendant Police Officers, Decedent suffered the injuries and death described above.

104.      The above described actions of Defendant Police Officers were so malicious, intentional, and/or reckless and displayed such a reckless indifference to the Decedent's rights and well-being that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant Police Officers and grant him all appropriate relief, including, but not limited to, compensatory damages, punitive damages, court costs, attorney fees and all other relief as it deems appropriate under 42 U.S.C. §§ 1983, 1988 and under Pennsylvania law.

### COUNT IV – FAILURE TO TRAIN AND SUPERVISE 42 U.S.C. § 1983
**(Plaintiff v. PA State Police, Delaware County and Tinicum Township)**

105.    Plaintiff hereby incorporates by reference Paragraphs 1 through 104 as if set forth in their entirety.

106.    Defendants PA State Police, Delaware County and Tinicum Township acted under the color of state law and were state actors at all times relevant to the matters complained of herein.

107.    Defendants PA State Police, Delaware County and Tinicum Township deprived Decedent of his rights and privileges secured under the Fourth and Fourteenth Amendments to the U.S. Constitution, which guarantees his right to be secure from unreasonable searches and seizures and the right to due process of the law.

108.    Decedent's injuries and damages were a direct and proximate result of the conduct of Defendants PA State Police, Delaware County and Tinicum Township as follows:

    a.  By failing to properly train their individual police officers in establishing lawful probable cause before arresting an individual;

    b.  By failing to properly train their individual police officers in safe methods of handling arrested persons;

    c.  By failing to properly train their individual police officers the use of proper restraint, as opposed to the arbitrary and unlawful use of excessive force;

d. By failing to properly train their individual police officers with respect to the arbitrary use of excessive force against persons placed under arrest;

e. By failing to properly train their individual police officers regarding the proper use of a Taser;

f. By failing to properly train their individual police officers in the proper use of non-lethal force;

g. By failing to properly train their individual police officers in the proper use of lethal force;

h. By failing to properly train their individual police officers on the proper procedures for providing medical information to medical personnel regarding arrested individuals;

i. By failing to properly train their individual police officers on the proper procedures for providing arrested individuals with access to medical care;

j. By failing to properly supervise their individual police officers so as to prevent the use of excessive force and/or unreasonable force;

k. By failing to properly punish prior acts of their individual police officers who have inflicted excessive force on persons under arrest;

l. By failing to properly train, supervise and/or discipline their individual police officers to such an extent that the conduct of their individual police officers in this case was inevitable.

109.    The actions of Defendant Police Officers resulted from and were taken pursuant to the policies, practices and/or customs of defendants PA State Police, Delaware County and Tinicum Township.

110.    Defendants PA State Police, Delaware County and Tinicum Township have approved and condoned the actions and procedures implemented and enforced by their individual police officers in this case and others.

111.    The Defendant Police Officers' application of unwarranted, unlawful and excessive force and violence upon Decedent, while in the custody of Defendant Police Officers, caused Decedent's injuries and death and was the result of policies, practices

and/or customs of defendants PA State Police, Delaware County and Tinicum Township.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against defendants PA State Police, Delaware County and Tinicum Township and grant him all appropriate relief, including, but not limited to, compensatory damages, court costs, punitive damages, attorney fees and all other relief as it deems appropriate under 42 U.S.C. §§ 1983, 1988 and under Pennsylvania law.

### COUNT V – ASSAULT AND BATTERY
**(Plaintiff v. Defendant Police Officers, PA State Police, Delaware County and Tinicum Township)**

112.    Plaintiff hereby incorporates by reference Paragraphs 1 through 111 as if set forth in their entirety.

113.    Defendant Police Officers, PA State Police, Delaware County and Tinicum Township acted under the color of state law and were state actors at all times relevant to the matters complained of herein.

114.    At all times relevant to the matter complained of herein, Defendant Police Officers, PA State Police, Delaware County and Tinicum Township acted individually and/or jointly and severally with intent to cause immediate fear of harmful or offensive touching and contact and with intent to cause harmful and/or offensive touching and contact with Decedent proximately causing considerable fear, touching, pain and death.

115.    The actions of Defendant Police Officers, PA State Police, Delaware County and Tinicum Township were intentional, negligent, recklessly indifferent, willful, wanton, malicious and outrageous.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant Police Officers, PA State Police, Delaware County and Tinicum Township and grant him all appropriate relief, including, but not limited to, compensatory damages, punitive damages, court costs, attorney fees and all other relief as it deems appropriate.

### COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff v. Defendant Police Officers, PA State Police, Delaware County and Tinicum Township)

116.    Plaintiff hereby incorporates by reference Paragraphs 1 through 115 as if set forth in their entirety.

117.    Defendant Police Officers, PA State Police, Delaware County and Tinicum Township acted under the color of state law and were state actors at all times relevant to the matters complained of herein.

118.    The conduct of Defendant Police Officers, PA State Police, Delaware County and Tinicum Township described herein was extreme and outrageous and was designed to intentionally or recklessly cause severe emotional distress to Decedent.

119.    As a direct and proximate result of the aforementioned conduct of Defendant Police Officers, PA State Police, Delaware County and Tinicum Township, Decedent suffered severe emotional distress.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant Police Officers, PA State Police, Delaware County and Tinicum Township and grant him all appropriate relief, including, but not limited to, compensatory damages, punitive damages, court costs, attorney fees and all other relief as it deems appropriate.

## COUNT VII – NEGLIGENCE
### (Plaintiff v. Defendants PA State Police, Delaware County and Tinicum Township)

120.    Plaintiff hereby incorporates by reference Paragraphs 1 through 120 as if set forth in their entirety.

121.    Defendants PA State Police, Delaware County and Tinicum Township acted under the color of state law and were state actors at all times relevant to the matters complained of herein.

122.    Defendants PA State Police, Delaware County and Tinicum Township owed Decedent, a lawful resident of Pennsylvania, a duty of care not to act negligently or recklessly in the training they provide to their individual police officers in how to treat individuals.

123.    The failures of PA State Police, Delaware County and Tinicum Township to adequately supervise, train, and discipline Defendant Police Officers amounted to a deliberate indifference to the rights of persons, including Decedent, with whom Defendant Police Officers came into contact during the course of their original duties as police officers.

124.    The failures of defendants PA State Police, Delaware County and Tinicum Township to properly train and supervise their individual police officers produced an environment that not only tolerated but condoned the actions and procedures implemented by Defendant Police Officers against Decedent that caused his death.

125.    The policies, practices and/or customs of defendants PA State Police, Delaware County and Tinicum Township caused a deprivation of Decedent's rights and

privileges secured to him by the U.S. Constitution, Pennsylvania Constitution and federal and state law.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against defendants PA State Police, Delaware County and Tinicum Township and grant him all appropriate relief, including, but not limited to, punitive damages, compensatory damages, court costs, attorney fees and all other relief as it deems appropriate.

### COUNT VIII – NEGLIGENCE / PROFESSIONAL LIABILITY
### (Plaintiff v. Dr. Varacalli)

126.    Plaintiff hereby incorporates by reference Paragraphs 1 through 125 as if set forth in their entirety.

127.    Dr. Varacalli owed Hakim Jackson a duty to have the same knowledge and skill and to use the same care normally used in the medical profession when she rendered medical care to Hakim Jackson.

128.    Dr. Varacalli breached this duty through her negligence and carelessness as set forth herein.

129.    As a direct and proximate result of the negligence and carelessness of Dr. Varacalli as set forth herein, Hakim Jackson suffered severe physical injuries and harm.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Dr. Varacalli and award Plaintiff all appropriate relief, including Pennsylvania Rule of Civil Procedure 238 damages and interest.

### COUNT IX – NEGLIGENCE / PROFESSIONAL LIABILITY
### (Plaintiff v. John Doe Attending)

130.    Plaintiff hereby incorporates by reference Paragraphs 1 through 129 as if set forth in their entirety.

131.     John Doe Attending owed Hakim Jackson a duty to have the same knowledge and skill and to use the same care normally used in the medical profession while Hakim Jackson was under his/her care.

132.     John Doe Attending breached this duty through his/her negligence.

133.     As a direct and proximate result of the negligence and carelessness of John Doe Attending as set forth herein, Hakim Jackson suffered severe physical injuries and harm.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against John Doe Attending and award Plaintiff all appropriate relief, including Pennsylvania Rule of Civil Procedure 238 damages and interest.

## COUNT X – NEGLIGENCE / VICARIOUS LIABILITY
### (Plaintiff v. Crozer-Chester)

134.     Plaintiff hereby incorporates by reference Paragraphs 1 through 133 as if set forth in their entirety.

135.     Crozer-Chester is vicariously liable for all of the negligent acts and omissions committed by its agents, servants and employees, including Dr. Varacalli and John Doe Attending, as set forth herein.

136.     Crozer-Chester is vicariously liable for all damages and harm incurred by Hakim Jackson as a direct and proximate cause of the negligence and carelessness of Crozer-Chester's agents, servants and employees, including Dr. Varacalli and John Doe Attending, as set forth herein.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against John Doe Attending and award Plaintiff all appropriate relief, including Pennsylvania Rule of Civil Procedure 238 damages and interest.

## COUNT XI – CORPORATE NEGLIGENCE
### (Plaintiff v. Crozer-Chester)

137.    Plaintiff hereby incorporates by reference Paragraphs 1 through 136 as if set forth in their entirety.

138.    Crozer-Chester owed Hakim Jackson a duty to ensure his safety and well-being while he was under the care of Crozer-Chester.

139.    Crozer-Chester breached its duty of care through its negligence and carelessness as set forth herein.

140.    As a direct and proximate result of the negligence and carelessness of Crozer-Chester as set forth herein, Hakim Jackson suffered severe physical injuries and harm.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against John Doe Attending and award Plaintiff all appropriate relief, including Pennsylvania Rule of Civil Procedure 238 damages and interest.

## . COUNT XII – WRONGFUL DEATH
### (Naji Mohammad as Administratrix of the Estate of HAKIM JACKSON v. All Defendants)

141.    Plaintiff hereby incorporates by reference Paragraphs 1 through 140 as if set forth in their entirety.

142.    Plaintiff is the Administratrix of the Decedent's estate and brings this action by virtue of 42 Pa. C.S.A. 8301 and Pa.R.C.P. 2202 and claims all benefits of the Wrongful Death Act on behalf of himself and all other persons entitled to recover under the law and more specifically the reasonable hospital, nursing, medical, funeral expenses, and expenses of administration necessitated by reason of the injuries that caused Hakim Jackson's death.

143.    By reason of the death of Hakim Jackson, his Administratrix, who is his father, and his son Hakim Wells, who survived him, suffered great pecuniary loss as well as funeral expenses and expenses of administration necessitated by reason of the injuries which caused his death.

144.    Prior to his death and because of the actions of the defendants as described more fully herein, Hakim Jackson underwent great pain, suffering and anxiety including conscious knowledge of his impending death.

145.    Hakim Jackson was hospitalized from the date of his severe beating until the date of his death and was aware of his injuries and suffered greatly.

146.    By reason of Hakim Jackson's death, Hakim Wells, his surviving child, permanently lost Hakim Jackson's guidance and tutelage.

147.    Each Defendant is liable to Plaintiff for the damages stated herein because their actions, as described more fully herein, caused the death of Hakim Jackson and loss to his Estate.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all defendants and grant him all appropriate relief, including, but not limited to, compensatory damages and all other relief permitted under the Wrongful Death Act.

## COUNT XIII – SURVIVIAL
### (Naji Mohammad as Administratix of the Estate of HAKIM JACKSON v. All Defendants)

148.    Plaintiff hereby incorporates by reference Paragraphs 1 through 147 as if set forth in their entirety.

149.    Plaintiff also brings this action on behalf of the Estate of Hakim Jackson, deceased, under 42 Pa. C.S.A. §8392 and 20 Pa. C.S.A. §3371, and claims all benefits

of the Survival Act on behalf of himself and all other persons entitled to recover under law.

150.    Plaintiff claims on behalf of the Estate all the damages suffered by the Estate by reason of Hakim Jackson's death, including but not limited to, the anxiety, fear, pain, suffering and conscious awareness of impending death suffered by Hakim Jackson between the moment of injury and the moment of his death.

151.    Plaintiff claims on behalf of the Estate all the damages suffered by the Estate by reason of Hakim Jackson's death, including but not limited to, medical expenses, and the loss of future earnings and earning capacity suffered by Hakim Jackson.

152.    Each Defendant is liable to Plaintiff for the damages stated herein because their actions, as discussed more fully herein, caused the death of Hakim Jackson and loss to his Estate.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all defendants and grant him all appropriate relief, including, but not limited to, punitive damages, compensatory damages, and all other relief permitted under the Survival Act.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Dated: August 3, 2011

By:    Joe H. Tucker, Jr., Esquire
       Kathleen Kirkpatrick, Esquire
       Riley H. Ross III, Esquire
       One Penn Center at Suburban Station
       1617 JFK Blvd., Suite 1700
       Philadelphia, PA 19103
       (215) 875-0609

28