# EXHIBIT "D"

IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NAJI MUHAMMAD, individually and   :
as Administratrix of the ESTATE of   :
HAKIM JACKSON, Deceased         :
            Plaintiff,          :
                        :
                        :
       v.               :     CIVIL ACTION
                        :
FORMER PENNSYLVANIA       :     NO. 2:11-cv-5004
STATE POLICE COMMISSIONER  :
FRANK PAWLOWSKI,         :
In his individual capacities,     :
                        :     JURY TRIAL DEMANDED
TROOPER MICHAEL MCKEON,    :
in his individual capacity,     :
                        :
TROOPER JOSEPH YINGLING    :
in his individual capacity,     :
                        :
TROOPER JASON ZACHARIAH   :
in his individual capacity,     :
                        :
MAJOR JOHN LAUFER        :
in his individual capacity,     :
                        :
FORMER CAPTAIN/TROOP     :
COMMANDER DAVID YOUNG   :
in his individual capacity,     :
                        :
FORMER CORPORAL ROBERT   :
REILLY,                     :
in his individual capacity,     :
                        :
CROZER-CHESTER MEDICAL   :
CENTER                   :
                        :
DAWN SALVUCCI, R.N.      :
                        :
KRISTIN VARACALLI, DO     :
                        :
HUSSEIN KILIDDAR, M.D.    :
             Defendants. :

## SECOND AMENDED COMPLAINT

Plaintiff, NAJI MUHAMMAD, individually and as Administratrix of the ESTATE OF

HAKIM JACKSON, by and through his counsel, Tucker Law Group, LLC, and, by way of

Complaint against the above-named Defendants upon causes of action, hereby

complains and avers as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. §§ 1331 and 1343, in that it raises questions of federal law,

pursuant to the United States Constitution and other federal laws governing civil rights,

including 42 U.S.C. §§ 1983 and 1988.

2.      This Court has supplemental jurisdiction over the related common-law and

state-law claims raised pursuant to 28 U.S.C. § 1367.

3.      Venue in the Eastern District of Pennsylvania is proper pursuant to 28

U.S.C. § 1391 in so far as the following alleged unlawful conduct that forms the factual

and legal bases of this Complaint occurred within the geographical limits of this District.

## PARTIES

4.      Plaintiff Naji Muhammad is an adult individual who resides at 2205 E.

Washington Lane, Philadelphia, PA 19138 and is the Administratrix of the Estate of

Hakim Jackson ("Hakim Jackson" or "Decedent"), as appointed by Ronald R. Donatucci,

Register for the Probate of Wills and Grant of Letters Testamentary and of

Administration for the County of Philadelphia in the Commonwealth of Pennsylvania.

5.        Defendant Former Pennsylvania State Police Commissioner Frank

Pawlowski (hereafter, "Defendant Pawlowski") was, at all times relevant hereto, the

Commissioner of the Pennsylvania State Police, acting in the course and scope of his

employment and acting under the color of state law.  As the Commissioner of the

Pennsylvania State Police, Defendant Pawlowski, at all times relevant hereto, was the

ultimate authority with the Pennsylvania State Police, and charged with overseeing the

training of the Pennsylvania State Police and with upholding the rules, regulations,

directives and/or laws of the Pennsylvania State Police, as well as the laws and

Constitution of the Commonwealth of Pennsylvania and the Constitution of the United

States.  Defendant Pawlowski currently resides at 112 Biddle Drive, Exton,

Pennsylvania 19341. Plaintiff is suing Defendant Pawlowski in his individual capacity.

6.        Defendant Trooper Michael McKeon (hereafter, "Defendant McKeon")

was, at all times relevant hereto, a Trooper with the Pennsylvania State Police, acting

under the color of state law and acting pursuant to the customs, policies and practices

of the Pennsylvania State Police.  Upon information and belief, Defendant McKeon's

current principal place of business is 2201 Belmont Avenue, Philadelphia, Pennsylvania

19131.  Defendant McKeon is being sued in his individual capacity.

7.        Defendant Trooper Joseph Yingling (hereafter, "Defendant Yingling") was,

at all times relevant hereto, a Trooper with the Pennsylvania State Police, acting under

the color of state law and acting pursuant to the customs, policies and practices of the

Pennsylvania State Police.  Upon information and belief, Defendant Yingling's current

principal place of business is 1342 W. Baltimore Pike, Media, Pennsylvania 19063.

Defendant Yingling is being sued in his individual capacity.

3

8.        Defendant Trooper Jason Zachariah (hereafter, "Defendant Zachariah") was, at all times relevant hereto, a Trooper with the Pennsylvania State Police, acting under the color of state law and acting pursuant to the customs, policies and practices of the Pennsylvania State Police.  Upon information and belief, Defendant Zachariah's current principal place of business is 1342 W. Baltimore Pike, Media, Pennsylvania 19063.  Defendant Zachariah is being sued in his individual capacity.

9.        Defendant Major John Laufer (hereafter, "Defendant Laufer") was, at all times relevant hereto, the Director of The Bureau of Training and Education for the Pennsylvania State Police, acting in the course and scope of his employment and acting under the color of state law.  As the Director of The Bureau of Training and Education, Defendant Laufer, at all times relevant hereto, was charged with overseeing the training of the Pennsylvania State Police and with upholding the rules, regulations, directives and/or laws of the Pennsylvania State Police, as well as the laws and Constitution of the Commonwealth of Pennsylvania and the Constitution of the United States.  Defendant Laufer's current principal place of business is 175 E. Hershey Park Drive, Hershey, Pennsylvania 17033.  Plaintiff is suing Defendant Laufer in his individual capacity.

10.       Defendant Former Captain/Troop Commander David Young (hereafter, "Defendant Young") was, at all times relevant hereto, the Troop Commander of Troop K of the Pennsylvania State Police, acting in the course and scope of his employment and acting under the color of state law.  Upon information and belief, as the Troop Commander of Troop K, Defendant Young, at all times relevant hereto, was charged with overseeing the training of the Pennsylvania State Police Officers of Troop K and with upholding the rules, regulations, directives and/or laws of the Pennsylvania State

4

Police, as well as the laws and Constitution of the Commonwealth of Pennsylvania and the Constitution of the United States. Currently, Defendant Young serves as a Lieutenant in Troop F, Montoursville as Commander of Criminal Investigations and his principal place of business is 899 Cherry Street Montoursville, PA 17754. Plaintiff is suing Defendant Young in his individual capacity.

11.     Defendant Former Corporal Robert Reilly (hereafter, "Defendant Reilly") was, at all times relevant hereto, a Corporal with Troop K, Media Barracks, acting in the course and scope of his employment and acting under the color of state law. Upon information and belief, as a Corporal with Troop K, Media Barracks, Defendant Reilly, at all times relevant hereto, was the immediate supervisor of Defendant McKeon and Defendant Yingling and responsible for supervising, instructing, training, counseling, and/or disciplining certain officers of Troop K, including Defendant McKeon and Defendant Yingling, and with upholding the rules, regulations, directives and/or laws of the Pennsylvania State Police, as well as the laws and Constitution of the Commonwealth of Pennsylvania and the Constitution of the United States. Currently, Defendant Reilly serves as a Sergeant in Troop K, Media Barracks and his principal place of business is 1342 W. Baltimore Pike Media, Pennsylvania 19063. Plaintiff is suing Defendant Reilly in his individual capacity.

12.     Upon information and belief, the Defendant Dawn Salvucci, R.N. (hereafter, "Defendant Nurse Salvucci") is, and was at all times relevant hereto, a nurse registered with the Commonwealth of Pennsylvania. At all times relevant hereto, Defendant Nurse Salvucci rendered medical services at Crozer-Chester Medical

Center, One Medical Center Boulevard, Upland, Pennsylvania, 19013.  Plaintiff is asserting a professional liability claim against this defendant.

13.      At all times relevant hereto, Defendant Salvucci was acting under the direction and supervision of Defendant Kristin Varacalli, D.O. and/or Hussein Kiliddar, M.D. Defendant Nurse Salvucci was acting individually and/or by and through her actual, apparent and/or ostensible agents, servants and employees, all of whom were acting within the course and scope of their agency, service and employment, and all of whom participated in or were responsible for the care and treatment of Hakim Jackson.

14.      Upon information and belief, the defendant Kristin Varacalli, DO (hereafter, "Defendant Dr. Varacalli") at all times relevant hereto, was a resident and/or intern practicing medicine at Crozer-Chester Medical Center. Upon information and belief, she began her program on July 1, 2009.  At all times relevant hereto, Defendant Dr. Varacalli rendered medical services at One Medical Center Boulevard, Upland, Pennsylvania, 19013.  Plaintiff is asserting a professional liability claim against this defendant.

15.      At all times relevant hereto, Defendant Dr. Varacalli was acting under the direction and supervision of Dr. Kiliddar.  Defendant Dr. Varacalli was acting individually and/or by and through her actual, apparent and/or ostensible agents, servants and employees, all of whom were acting within the course and scope of their agency, service and employment, and all of whom participated in or were responsible for the care and treatment of Hakim Jackson.

16.      Upon information and belief, the defendant Hussein Kiliddar, M.D. (hereafter, "Defendant Dr. Kiliddar") is, and was at all times relevant hereto, an

individual licensed to practice medicine in the Commonwealth of Pennsylvania. At all times relevant hereto, Defendant Dr. Kiliddar rendered medical services at One Medical Center Boulevard, Upland, Pennsylvania, 19013. Plaintiff is asserting a professional liability claim against this defendant.

17.     At all times relevant hereto, Defendant Dr. Kiliddar was acting individually and/or by and through his actual, apparent and/or ostensible agents, servants and employees, all of whom were acting within the course and scope of their agency, service and employment, and all of whom participated in or were responsible for the care and treatment of Hakim Jackson.

18.     Defendant Crozer-Chester Medical Center (hereafter, "Defendant Crozer-Chester") is, and was at all times relevant hereto, a healthcare corporation organized and existing under the laws of the Commonwealth of Pennsylvania. At all times relevant hereto, Defendant Crozer-Chester rendered medical services at One Medical Center Boulevard, Upland, Pennsylvania, 19013. Plaintiff is asserting a professional liability claim against this defendant.

19.     At all times relevant hereto, Defendant Crozer-Chester was acting by and through its actual, apparent and/or ostensible agents, servants and employees, including Defendant Nurse Salvucci, Defendant Dr. Varacalli and Defendant Dr. Kiliddar, all of whom were acting within the course and scope of their agency, service and employment, and all of whom participated in and/or were responsible for the care and treatment of Hakim Jackson.

7

20.     At all times relevant hereto, Defendant Crozer-Chester was responsible for developing, implementing and promulgating policies and procedures for its medical professionals.

## FACTUAL ALLEGATIONS

### A. Defendant McKeon and Defendant Yingling Unlawfully Arrested, Seized and Assaulted Hakim Jackson

21.     Plaintiff hereby incorporates by reference Paragraphs 1 through ___ as if fully restated herein at length.

22.     On August 14, 2009, Hakim Jackson was a passenger in a vehicle that was involved in a traffic stop in the area of the John Heinz National Wildlife Refuge located in Tinicum Township.

23.     The traffic stop was initiated by Defendant McKeon and Defendant Yingling on a false claim that the vehicle changed lanes with using a signal.

24.     Hakim Jackson was generally in good health and was uninjured at the time of the traffic stop.

25.     At some point during the traffic stop, Defendant McKeon and Defendant Yingling arrested, detained and seized Hakim Jackson.

26..     The arrest, detention and seizure of Hakim Jackson by Defendant McKeon and Defendant Yingling were unlawful because it was effectuated by the unlawful use of force.

27.     Before, during, and after arresting, detaining and seizing Hakim Jackson, Defendant McKeon and Defendant Yingling intentionally and with malice aforethought and reckless indifference to the rights and safety of Hakim Jackson, attacked, struck,

punched, bludgeoned, choked, beat, dragged, repeatedly shocked with an electronic immobilization device, and otherwise severely injured Hakim Jackson.

28.      The beating and injuries incurred by Hakim Jackson by Defendant McKeon and Defendant Yingling were unprovoked, unlawful, and without probable cause or justification.

29.      The beating incurred by Hakim Jackson by Defendant McKeon and Defendant Yingling caused indivisible injuries to Hakim Jackson as they were caused by multiple blows, strikes, and actions by more than one individual.

### B. Defendant Crozer-Chester Allows Defendant Police Officers to Dictate their Course of Medical Treatment of Hakim Jackson

30.      Plaintiff hereby incorporates by reference Paragraphs 1 through ___ as if fully restated herein at length.

31.      As a result of the severe injuries inflicted by Defendant McKeon and Defendant Yingling, Hakim Jackson required urgent and immediate medical attention. After the beating, Hakim Jackson was to Defendant Crozer-Chester's Emergency Room in the custody of at least one Pennsylvania State Police Trooper at approximately 7:00 p.m. on August 14, 2009.  He was covered in mud and under arrest.

32.      Medical personnel noted that Hakim Jackson had abrasions all over his body and that his right shoulder was eccymotic and swollen.

33.      It was also noted that Hakim Jackson had "taser" marks on the back of his right shoulder, and on his mid and lower back, with hematomas at each "taser" site. Additionally, Hakim Jackson had a right forehead abrasion.

34.      Due to the severity of Hakim Jackson's condition, he was admitted to the Medical Intensive Care Unit ("MICU") on August 15 at approximately 2:40 a.m.  Hakim

Jackson was in critical condition, suffering from swelling in his brain, a breakdown of muscle fibers known as rhabdomyolysis and acute renal failure, all due to the beating inflicted by Defendant Yingling, and Defendant, McKean, and each of them.

35.     While in the MICU, Hakim Jackson required massive amounts IV fluids and blood transfusions.

36.     Despite treatment, Hakim Jackson's laboratory results remained highly abnormal with evidence of massive muscle breakdown.

37.     Various members of the Pennsylvania State Police, including Defendant Zachariah, stationed themselves at the bedside of Hakim Jackson throughout his hospitalization and attempted to influence and dictate the medical treatment of Hakim Jackson in contravention of the policies and procedures of the Defendant, Crozer-Chester

38.     On the morning of August 15, 2009, Defendant Crozer-Chester medical personnel, by and through its agents, servants and employees, including Defendants Nurse Salvucci, Dr. Varacalli and/or Dr. Kiliddar, heavily sedated Hakim Jackson by administrating Fentanyl and Ativan.

39.     Defendants, Dr. Varacalli, Dr. Kiliddar and Nurse Salvucci, believed it was in Hakim Jackson's best interest to sedate him by using Fentanyl and Ativan.

40.     Shortly thereafter, Defendant Zachariah ordered that Hakim Jackson be awakened so that he could be arraigned at bedside.

41.     Defendants, Nurse Salvucci, Dr., Varacalli and Dr. Kiliddar agreed with and acquiesced to Defendant Zachariah's instruction to awaken Hakim Jackson from his medical induced state.

10

42.     In contravention of Defendant Crozer-Chester's policy, Defendants, Nurse Salvucci, Dr., Varacalli and Dr. Kiliddar, attempted to medically reverse Hakim Jackson's sedated medical state.

43.     Defendants, Nurse Salvucci, Dr., Varacalli and Dr. Kiliddar, knew that it was not absolutely necessary and relinquished full control of Hakim Jackson's medical care in compliance with Defendant Zachariah's instructions.

44.     Defendants, Nurse Salvucci, Dr., Varacalli and Dr. Kiliddar, knew that the attempted reversal of the sedation would jeopardize the life or health of Hakim Jackson.

45.     Defendant, Crozer-Chester, failed to have an ombudsman to assure that its administrative policy and procedure manual was enforced for the safety of its patients and allowed Defendant Zachariah to dictate medical policy in its facility.

46.     Defendant Crozer-Chester allowed Defendant Zachariah to dictate medical care for its patient, in violation of state law and its own policies.

47.     Upon information and belief, Defendant Dr. Varacalli either consulted with or failed to consult with Defendant Dr. Kiliddar or another more experienced medical doctor to determine the medical necessity of the request made by Defendant Zachariah.

48.     Defendant Crozer-Chester failed to monitor, direct, and enforce their own policies and procedures to assure that non-medical personnel such as Defendant Zachariah would not dictate the medical care of patients obtaining medical treatment at its facility.

49.     Under Defendant Dr. Varacalli and/or Defendant Dr. Kiliddar's orders, and in agreement with and as part of a civil conspiracy with Defendant Zachariah, Defendant Nurse Salvucci administered to Hakim Jackson four doses of Narcan and five doses of

11

Flumazenil between 11:15 a.m. and 11:28 a.m. to reverse the effects of the sedative drugs previously administered to him.

50.      Because of the conduct of the defendants, and each of them, acting individually and collectively, Hakim Jackson experienced a rise in his heart rate and blood pressure which, in conjunction with and as a proximate cause with the unlawful beating and tasing, more fully set forth above, lead to his death.

51.      The actions and inactions of Defendants, and each of them, alone, and in conspiracy with each other, caused Hakim Jackson severe physical injuries and harm and was the proximate cause of his injuries and   death.

### C. The Actions Of The State Actors Deprived Hakim Jackson of His Rights and Privileges

52.      Plaintiff hereby incorporates by reference Paragraphs 1 through __ as if fully restated herein at length.

53.      Hakim Jackson remained in police custody from the time of his unlawful seizure until the time of this death, with an Officer stationed at his bedside until his death.

54.      Members of the Pennsylvania State Police, including Defendant Zachariah, conspired with each other and Crozer-Chester medical personnel to cover-up the severe beating and abuse of Hakim Jackson by attempting to interfere with the medical treatment of Hakim Jackson.

55.      Members of the Pennsylvania State Police did interfere with the medical treatment of Hakim Jackson by falsely telling Defendant Crozer-Chester doctors and medical personnel that Hakim Jackson ingested bags of cocaine prior to his arrest,

thereby attempting to deceive doctors and medical personnel about the cause of Hakim Jackson's injuries.

56.      However, while still alive, Hakim Jackson vehemently denied to Defendant Crozer-Chester Medical Center doctors and medical personnel that he ingested bags of cocaine.

57.      Members of the Pennsylvania State Police also interfered with the medical treatment of Hakim Jackson by presenting an incomplete and biased history of Defendant McKeon's and Defendant Yingling's encounter with Hakim Jackson that minimized the extent of the physical injuries that were inflicted.

58.      However, the medical records prove that Hakim Jackson was severely beaten and abused while in the custody of Defendant McKeon and Defendant Yingling.

59.      An autopsy performed on Hakim Jackson showed extensive hemorrhage in the neck muscles down to the level of Hakim Jackson's voice box and bite marks on his tongue, indicative of Hakim Jackson being choked.

60.      The autopsy also showed that the only areas on Hakim Jackson without significant trauma were below his knees.

61.      Importantly, the autopsy failed to reveal any cocaine bags.

62.      Defendant McKeon's and Defendant Yingling's application of unwarranted, unlawful and excessive force and violence upon Hakim Jackson, while he was in the custody of the Pennsylvania State Police, caused Hakim Jackson to suffer severe physical injuries and harm resulting in death.

63.      Prior to Hakim Jackson's death, and at all times relevant hereto, Defendant Pawlowski, Defendant Laufer, Defendant Young, and Defendant Reilly

(collectively, "Defendant State Supervisors") were charged with the training,

supervision, instructing, counseling and disciplining of Pennsylvania Police Officers,

including Defendant McKeon, Defendant Yingling and Defendant Zachariah.

64.     At all times relevant hereto, Defendant State Supervisors implemented,

promoted, maintained and encouraged deficient and inadequate training in the use of

force in general and the use of electronic immobilization devices (hereafter "electronic

immobilization device" or "EID") in particular.

65.     At all times relevant hereto, Defendant Pawlowski and Defendant Laufer

implemented, allowed and enforced an inadequate use of force of policy whereby

Pennsylvania State Police Officers, including Defendant McKeon, Defendant Yingling

and Defendant Zachariah could choose from an array of so-called non-lethal devices

such as pepper spray, an asp baton or an EID in which to affect an arrest without

setting forth specific guidelines on when each device should be used.

66.     At all times relevant hereto, Defendant Young and Defendant Reilly

encouraged, tolerated and enforced this inadequate use of force policy on Pennsylvania

State Police Officers under their direction, including Defendant McKeon, Defendant

Yingling and Defendant Zachariah.

67.     At all times relevant hereto, Defendant Pawlowski and Defendant Laufer

were responsible for initial and yearly trainings in the use of force and electronic

immobilization devices that failed to adequately teach Pennsylvania State Police

Officers the proper use of electronic immobilization devices and the dangers of such

use.

68.     The training administered under the direction of Defendant Pawlowski and Defendant Laufer in the use of electronic immobilization devices has not changed since their initiation in 2006 despite the increased proof of dangers associated with electronic immobilization devices.

69.     At all times relevant hereto, Defendant Young and Defendant Reilly were responsible for the daily supervision of Defendant McKeon, Defendant Yingling and Defendant Zachariah and failed to provide appropriate training and discipline in the use of electronic immobilization devices.

70.     Defendant McKeon, Defendant Yingling and Defendant Zachariah each received training in the use of EIDs for the first time in 2006.  The training failed to instruct attendees on the dangers of repeatedly applying electric shocks to individuals. The training also failed to teach attendees of widely-accepted dangers of using EIDs.

71.     The training in the use of EIDs given to Defendant McKeon, Defendant Yingling and Defendant Zachariah each year thereafter did not change and failed to instruct attendees on the dangers of repeatedly applying electric shocks to individuals. The training also failed to teach attendees of widely-accepted dangers of using EIDs.

72.     Prior to Hakim Jackson's death, and at all times relevant hereto, Defendant State Supervisors encouraged, tolerated, ratified, and/or had been deliberately indifferent to the following patterns, practices and customs and/or to the need for the implementation of some, more or different training, supervision, investigation and/or discipline in the areas of:

    a.  Arresting individuals by using unnecessary force;

    b.  The use of unreasonable force and excessive force by Police Officers against individuals;

    c.  The improper exercise of police powers, including but not limited to the unreasonable use of force, the excessive use of force against individuals and the appropriate choice of force to use;

    d.  The monitoring of Police Officers known to use unreasonable force and excessive force against individuals;

    e.  The monitoring of Police Officers known to abuse police powers, including but not limited to the overuse of electronic immobilization devices on individuals;

    f.  The failure to identify, properly investigate and take remedial and/or disciplinary action against Police Officers who were the subject of prior civilian and/or internal complaints of misconduct;

    g.  The failure to take remedial and/or disciplinary action against Police Officers known to use unreasonable force and excessive force against individuals

    h.  The failure to take remedial and/or disciplinary action against Police Officers known to abuse police powers, including but not limited to the overuse of electronic immobilization devices on individuals;

    i.  The failure to require, enforce and oversee the proper investigation of deaths of individuals who die in police custody, including Hakim Jackson.

    j.  Providing proper instruction and training to Police Officers with regards to the use of electronic immobilization devices;

    k.  Failing to establish proper policies, procedures, directives, and instructions regarding providing information to medical personnel relating to arrested individuals;

73.      Prior to Hakim Jackson's death, and at all times relevant hereto,

Defendant State Supervisors maintained deliberate indifference to and/or lacked

sufficient safeguards to prevent Police Officers such as Defendant McKeon, Defendant

Yingling and Defendant Zachariah from engaging in lethal behavior such as severely

beating and abusing individuals without cause or justification and interfering with the

medical treatment of individuals.

74.     Defendant Yingling claimed to use his EID on Hakim Jackson three times. However, a download of the EID used by Defendant Yingling in arresting and seizing Hakim Jackson showed that Defendant Yingling used his EID at least nine (9) times in connection of the arrest and seizure of Hakim Jackson.

75.     Defendant Pawlowski, Defendant Laufer, Defendant Young and Defendant Reilly oversaw the Pennsylvania State Officers investigating the death of Hakim Jackson ignored this discrepancy and did not impose any discipline on Defendant Yingling or Defendant McKeon.

76.     As a direct and proximate result of the conduct of Defendant McKeon, Defendant Yingling, Defendant Zachariah and Defendant State Supervisors, Hakim Jackson was deprived of rights and privileges secured to him by the U.S. Constitution, Pennsylvania Constitution and federal and state law.

**D. Defendant Crozer-Chester and Its Agents, Servants and Employees Were Negligent, Careless and Showed Reckless Indifference in Their Treatment of Hakim Jackson**

77.     Plaintiff hereby incorporates by reference Paragraphs 1 through __ as if fully restated herein at length.

78.     Defendant Dr. Varacalli and/or Defendant Kiliddar's order to Defendant Nurse Salvucci to reverse Hakim Jackson's sedation served no medical purpose whatsoever, but was done at the instruction of Defendant Zachariah.

79.     In reversing Hakim Jackson's sedation, medical personnel, including Defendant Dr. Varacalli and Defendant Nurse Salvucci, acted in concert with Defendant Zachariah.

80.     Reversing a patient's sedation should be done for medical purposes only if health care providers believe the benefit of reversal is greater than the risk.

81.     Reversing Hakim Jackson's sedation for the purpose of an arraignment would be futile because a patient in Hakim Jackson's condition at the time would be too ill to understand the charges against him.

82.     As a doctor, Defendant Dr. Varacalli should have known that the risk of reversing Hakim Jackson's sedation far outweighed any medical benefit to keeping him sedated giving his condition at the time she made the order.

83.     As a nurse, Defendant Nurse Salvucci should have known that the risk of reversing Hakim Jackson's sedation far outweighed any medical benefit to keeping him sedated given his condition at the time she administered the drugs.

84.     Furthermore, the use of both Narcan and Flumazenil to reverse Hakim Jackson's sedation was blatantly dangerous due to the swelling in Hakim Jackson's brain at the time.

85.     Defendant Dr. Varacalli and Defendant Nurse Salvucci should have known that issuing multiple doses of both drugs on Hakim Jackson, a sedated patient with swelling in the brain, would cause further swelling in the brain, which could lead to herniation and death.

86.     Defendant Dr. Varacalli's decision to nevertheless reverse Hakim Jackson's sedation when the reversal served no medical purpose but instead placed an undue risk on Hakim Jackson, increased the risk of harm,  was negligent, careless and showed a reckless indifference to Hakim Jackson's health.

87.     Defendant Nurse Salvucci's decision to administered the drugs in an attempt to reverse Hakim Jackson's sedation when the reversal served no medical purpose but instead placed an undue risk on Hakim Jackson, increased the risk of harm, was negligent, careless and showed a reckless indifference to Hakim Jackson's health.

88.     As a direct and proximate result of the negligence, carelessness and reckless indifference of Defendant Dr. Varacalli, Hakim Jackson's condition worsened, causing him to suffer serious physical injuries and damages resulting in death.

89.     As a direct and proximate result of the negligence, carelessness and reckless indifference of Defendant Nurse Salvucci, Hakim Jackson's condition worsened, causing him to suffer serious physical injuries and damages resulting in death.

90.     As an intern who on August 15, 2009 had only six (6) weeks of experience working as an intern, Defendant Dr. Varacalli should not have made such an important decision on her own, but instead the decision should have been made in consultation with Defendant Dr. Kiliddar.

91.     Defendant Crozer-Chester medical records do not show any documentation by Defendant Dr. Kiliddar regarding the care of Hakim Jackson.

92.     Defendant Dr. Kiliddar failed to review the order of Defendant Dr. Varacalli to reverse the sedation of Hakim Jackson.

93.     Defendant Dr. Kiliddar should have been more involved in the care of Hakim Jackson, should have supervised Defendant Dr. Varacalli more carefully and should have been consulted regarding the reversal of Hakim Jackson's sedation,

including the decision to use drugs such as Narcan and Flumazenil in the reversal. Moreover, Defendant Dr. Kiliddar should have been required to document his involvement in Hakim Jackson's care.

94.     As the Attending Physician, Defendant Dr. Kilidar should have known that his/her careful supervision of interns such as Defendant Dr. Varacalli was necessary to properly care for Defendant Crozer-Chester patients such as Hakim Jackson and to insure that medical decisions made by interns such as Defendant Dr. Varacalli served medical purposes and were within the standard of care.

95.     Defendant Dr. Kiliddar's failure to properly supervise Defendant Dr. Varacalli and failure to participate more in the care of Hakim Jackson was negligent, careless and showed a reckless indifference to Hakim Jackson's health.

96.     As a direct and proximate result of Defendant Dr. Kiliddar's negligence, carelessness and reckless indifference, Hakim Jackson's sedation was reversed, causing him to suffer severe physical injuries and harm resulting in death

97.     Defendant Crozer-Chester owed an overall duty to Hakim Jackson to ensure his safety and well-being while Hakim Jackson was under the care of Defendant Crozer-Chester.  Defendant Crozer-Chester's duty to Hakim Jackson included the following:

    a.  a duty to select and retain only competent physicians;

    b.  a duty to oversee all persons who practice medicine within its walls as to patient care; and

    c.  a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for its patients.

98.     Defendant Crozer-Chester individually and through its agents, servants, and/or employees, including Defendant Nurse Salvucci, Defendant Dr. Varacalli and Defendant Dr. Kiliddar, breached its duty of care owed to Hakim Jackson to ensure his safety and well-being both generally and in the following particular respects:

   a.  failing to adhere to the proper standard of care in the overall treatment of Hakim Jackson, including reversing Hakim Jackson's sedation for no medical purpose whatsoever and at great risk to his health;

   b.  failing to recognize or disregarding the fact that the risk of reversing Hakim Jackson's sedation far outweighed the benefit to Hakim Jackson, especially given his condition at the time the decision was made;

   c.  failing to recognize or disregarding the fact that reversing Hakim Jackson's sedation served no medical purpose;

   d.  failing to select and retain only competent physicians, interns and medical personnel in the proper treatment of patients, including Jackson.

   e.  failing to select and retain only competent physicians, interns and medical personnel resulting in the retention of doctors, interns and medical personnel that make and implement vital and life-threatening medical decisions that serve no medical purpose;

   f.  failing to formulate, adopt, and enforce adequate rules and policies to ensure quality of care for its patients and to prevent doctors, interns and medical personnel from making and implementing vital and life-threatening medical decisions that serve no medical purpose;

   g.  failing to implement, adopt, monitor, enforce and train medical personnel on policies and procedures that adequately address and resist attempts by law enforcement to influence the treatment of patients resulting in its agents, servants, employees and/or medical personnel, including Defendant Nurse Salvucci, Defendant Dr. Varacalli and Defendant Dr. Kiliddar, being influenced by law enforcement's directives to the detriment of its patients, including Hakim Jackson;

   h.  failing to properly train its agents, servants, employees and/or medical personnel to adequately address and resist attempts by law enforcement to influence the treatment of patients resulting in its agents, servants, employees and/or medical personnel, including Defendant Nurse Salvucci, Defendant Dr. Varacalli and Defendant Dr. Kiliddar, being influenced by law enforcement's directives to the detriment of its patients, including

Hakim Jackson;

i.  failing to implement and monitor policies and procedures regarding adequate record documentation by attending physicians resulting in its agents, servants, employees and/or medical personnel, including Defendant Nurse Salvucci, Defendant Dr. Kiliddar, failing to properly document their involvement in the care of patients of Defendant Crozer-Chester, including Hakim Jackson;

j.  failing to oversee all persons who practice medicine within its walls as to patient care resulting in its agents, servants, employees and/or medical personnel, including Defendant Nurse Salvucci, Defendant Dr. Varacalli and Defendant Dr. Kiliddar,

k.  failing to oversee Defendant Nurse Salvucci, Defendant Dr. Varacalli and Defendant Dr. Kiliddar in making and implementing vital and life-threatening medical decisions that serve no medical purpose, and to be influenced by law enforcement's directives to the detriment of its patients, including Hakim Jackson;

l.  failing to properly train its attending physicians to properly supervise interns to prevent them from making harmful decisions resulting in Defendant Dr. Kiliddar failing to supervise Defendant Dr. Varacalli when she decided to reverse Hakim Jackson's sedation for no medical purpose whatsoever;

m.  Failing to monitor the medical services provided to Jackson;

n.  Failure to properly assign and/or monitor the assignment of physicians to patients, and the supervision of interns/residents by attending physicians, to ensure the proper care of patients, including Jackson;

o.  Failing to ensure that its patients, including Jackson, received adequate medical attention through consultation with proper and competent physicians;

p.  Failure of medical professionals such as Defendant Nurse Salvucci, to report changes in Jackson's condition and/or question physician's order that were not in accord with standard medical practice.

99.     Defendant Crozer-Chester had actual or constructive knowledge of the defects, policies and/or procedures that led to the harm and damages suffered by Hakim Jackson, as described above.

100.     Defendant Crozer-Chester knew or should have known that its policies and procedures would breach its duties of care owed to Hakim Jackson as described above.

101.     Defendant Crozer-Chester knew or should have known that its policies and procedures would breach its duties of care owed to Hakim Jackson.

102.     Although Defendant Crozer-Chester knew or should have known that its defects, policies or procedures would breach its duties of care owed to Hakim Jackson, it allowed those defects, policies and/or procedures to remain in place.

103.     As a direct and proximate result of Defendant Crozer-Chester's negligence, carelessness and reckless indifference, Hakim Jackson's sedation was reversed, causing him to suffer severe physical injuries and harm resulting in death.

104.     Defendants, and each of them, are jointly and severally liable for the injuries, damages, harm and death described in this Complaint.

## COUNT I – CONSPIRACY 42 U.S.C. § 1983
### (Plaintiff v. Defendant McKeon and Defendant Yingling)

105.     Plaintiff hereby incorporates by reference Paragraphs 1 through 104 as if fully restated herein at length.

106.     Defendant McKeon and Defendant Yingling acted under the color of state law and were state actors at all times relevant to the matters complained of herein.

107.     As detailed above, Defendant McKeon and Defendant Yingling, for illegal and unconstitutional reasons, entered into a conspiracy to violate the Decedent's rights guaranteed him under the U.S. Constitution, including but not limited to Fourth and Fourteenth Amendments.

108.     As detailed above, Defendant McKeon and Defendant Yingling performed overt acts in furtherance of the conspiracy, including but not limited to, reaching an agreement or meeting of the minds to subject Decedent to excessive force and attempted to conceal amount of force exerted by interfering with the medical treatment given to Decedent.

109.     As detailed above, the conspiracy directly and proximately resulted in harm to Decedent, including the deprivation of his rights and privileges under the Constitution of the United States the Constitution.

110.     As a direct and proximate result of the malicious, intentional and/or reckless actions of Defendant McKeon and Defendant Yingling, Decedent suffered severe physical injuries and harm resulting in death.

111.     The actions of Defendant McKeon and Defendant Yingling, in conspiring to deprive Decedent of his rights under the U.S. Constitution, were so intentional, negligent, recklessly indifferent, willful, wanton, malicious and outrageous that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant McKeon and Defendant Yingling and grant him all appropriate relief, including, but not limited to, compensatory damages, punitive damages, court costs, attorney fees and all other relief as it deems appropriate under 42 U.S.C. §§ 1983, 1988 and under Pennsylvania law.

### COUNT II – CONSPIRACY 42 U.S.C. § 1983
**(Plaintiff v. Defendant Zachariah, Defendant Crozer-Chester, Defendant Nurse Salvucci, Defendant Dr. Varacalli and Defendant Dr. Kiliddar)**

112.     Plaintiff hereby incorporates by reference Paragraphs 1 through 111 as if fully restated herein at length.

113.     As detailed above, Defendant Crozer-Chester, Defendant Nurse Salvucci, Defendant Dr. Varacalli and/or Defendant Dr. Kiliddar, for illegal and unconstitutional reasons, entered into a conspiracy with Defendant Zachariah to violate the Decedent's rights guaranteed him under the U.S. Constitution, including but not limited to the Fourth and Fourteenth Amendments.

114.     Defendant Zachariah acted under the color of state law and was a state actor at all times relevant to the matters complained of herein.

115.     As detailed above, Defendant Zachariah, Defendant Crozer-Chester, Defendant Nurse Salvucci, Defendant Dr. Varacalli and/or Defendant Dr. Kiliddar performed overt acts in furtherance of the conspiracy, including but not limited to, reaching an understanding, agreement and/or meeting of the minds to subject Decedent to unreasonable seizure and deprivation of liberty without due process and cruel and unusual punishment; Defendant Zachariah directing medical personnel, including Defendant Nurse Salvucci and Defendant Dr. Varacalli, to reverse Decedent's medically necessary sedation; and Defendant Dr. Varacalli and/or Dr. Kiliddarr's orders to medical personnel to reverse Decedent's sedation and the administration of the drugs to Decedent by Defendant Nurse Salvucci.

116.     Defendant Zachariah's purpose in reversing the medically necessary sedation was an attempt to cover up the unlawful acts of Defendants Yingling and McKeon as stated herein.

117.     As part and parcel of a police cover up of the unlawful actions of Defendants Yingling and McKeon, Defendant Zachariah and unknown State Troopers attempted to have the Decedent arraigned when he was incapable of understanding his constitutional rights.

118.     Defendants Nurse Salvucci, Dr. Varacalli and/or Dr. Kiliddar were fully aware that the Decedent could not understand any potential criminal proceeding due to his severe medical condition.

119.     In violation of hospital policy, Defendants, Nurse Salvucci, Dr. Varacalli and/or Dr. Kiliddar, knowingly conspired with Defendant Zachariah in an attempt to reverse Decedent's medically necessitated sedative state without regard to the highly dangerous medical ramifications of their actions.

120.     Defendants, Nurse Salvucci, Dr. Varacalli and/or Dr. Kiliddar, were fully aware that unknown State Troopers had caused severe physical harm to the Decedent and notwithstanding this knowledge, conspired with Defendant Zachariah to reverse the Decedent's sedative state, disregarding their obligation to remain in full control of their patient and joined the conspiracy to violate the Decedent's constitutional rights which resulted in his death.


121.     As detailed above, the conspiracy directly and proximately resulted in harm to Decedent, including the deprivation of his rights and privileges under the Constitution of the United States.

122.     As a direct and proximate result of the malicious, intentional and/or reckless actions of Defendant Zachariah, Defendant Crozer, Defendant Nurse Salvucci,

Defendant Dr. Varacalli and Defendant Dr. Kiliddar, Decedent suffered severe physical injuries and harm resulting in death.

123.    The actions of Defendant Zachariah, Defendant Crozer, Defendant Nurse Salvucci, Defendant Dr. Varacalli and Defendant Dr. Kiliddar in conspiring to deprive Decedent of his rights under the U.S. Constitution were so intentional, negligent, recklessly indifferent, willful, wanton, malicious and outrageous that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant Zachariah, Defendant Crozer, Defendant Nurse Salvucci, Defendant Dr. Varacalli and Defendant Dr. Kiliddar and grant him all appropriate relief, including, but not limited to, compensatory damages, punitive damages, court costs, attorney fees and all other relief as it deems appropriate under 42 U.S.C. §§ 1983, 1988 and under Pennsylvania law.

## COUNT III – FEDERAL CIVIL RIGHTS VIOLATIONS 42 U.S.C. § 1983
### (Plaintiff v. Defendant McKeon and Defendant Yingling)

124.    Plaintiff hereby incorporates by reference Paragraphs 1 through 123 as if fully restated herein at length.

125.    Defendant McKeon and Defendant Yingling acted under the color of state law and were state actors at all times relevant to the matters complained of herein.

126.    Defendant McKeon and Defendant Yingling deprived Decedent of his rights and privileges secured under the Fourth and Fourteenth Amendments to the U.S. Constitution, which guarantees his right to be secure from unreasonable searches and seizures, and excessive force and the right to due process of the law.

127.    Decedent's injuries and damages were a direct and proximate result of the
conduct of Defendant McKeon and Defendant Yingling as follows:

     a. arresting, detaining and seizing Decedent with the use of excessive force
       without justification;

     b. subjecting Decedent to a severe physical beating, including striking,
       punching, bludgeoning, choking, beating, and dragging Decedent under
       circumstances that did not justify the application of force;

     c. subjecting Decedent to multiple and unnecessary electric shocks by
       electronic immobilization devices;

     d. using excessive force that was not justified by Decedent's behavior;

     e. conspiring to violate Decedent's right to be free from excessive force.

128.    The actions of Defendant McKeon and Defendant Yingling were not
objectively reasonable under the facts and circumstances as set forth herein.

129.    The application of force applied by Defendant McKeon and Defendant
Yingling was excessive, inappropriate and without probable cause or justification.

130.    The force used by Defendant McKeon and Defendant Yingling was not
applied in a good faith effort to maintain and/or restore discipline or control.

131.    Defendant McKeon's and Defendant Yingling's application of unwarranted,
unlawful and excessive force and violence upon Decedent, while in the custody of the
Pennsylvania State Police, caused Decedent to suffer severe physical injuries and harm
resulting in death.

132.    The actions of Defendant McKeon and Defendant Yingling, in depriving
Decedent of his rights under the U.S. Constitution, were so intentional, negligent,
recklessly indifferent, willful, wanton, malicious and outrageous that the imposition of
punitive damages is warranted.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant McKeon and Defendant Yingling and grant him all appropriate relief, including, but not limited to, compensatory damages, punitive damages, court costs, attorney fees and all other relief as it deems appropriate under 42 U.S.C. §§ 1983, 1988 and under Pennsylvania law.

### COUNT IV – BYSTANDER LIABILITY 42 U.S.C. § 1983
**(Plaintiff v. Defendant McKeon and Defendant Yingling)**

133.    Plaintiff hereby incorporates by reference Paragraphs 1 through 132 as if fully restated herein at length.

134.    Defendant McKeon and Defendant Yingling were present at and participated in the illegal and unconstitutional use of excessive force upon Decedent.

135.    Defendant McKeon and Defendant Yingling had a duty to intervene and stop or prevent the unconstitutional use of excessive force upon Decedent.

136.    Defendant McKeon and Defendant Yingling had time to intervene and stop or prevent the unconstitutional use of excessive force upon Decedent, but failed to so act.

137.    Defendant McKeon's and Defendant Yingling's failure to act to intervene and stop or prevent the unconstitutional excessive force applied on Decedent was the direct and proximate cause of the Decedent being illegally and unconstitutionally assaulted.

138.    As detailed above, the failure of Defendant McKeon and Defendant Yingling to intervene and stop, or prevent, the unconstitutional assault and battery of the Decedent directly and proximately resulted in harm to Decedent, including the deprivation of his rights and privileges under the Constitution of the United States.

139.     As a direct and proximate result of the malicious, intentional and reckless actions of Defendant McKeon and Defendant Yingling, Decedent suffered severe physical injuries and harm resulting in death.

140.     The above described actions of Defendant McKeon and Defendant Yingling were so malicious, intentional, and/or reckless and displayed such a reckless indifference to the Decedent's rights and well-being that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant McKeon and Defendant Yingling and grant him all appropriate relief, including, but not limited to, compensatory damages, punitive damages, court costs, attorney fees and all other relief as it deems appropriate under 42 U.S.C. §§ 1983, 1988 and under Pennsylvania law.

## COUNT V – FEDERAL CIVIL RIGHTS VIOLATIONS 42 U.S.C. § 1983
### (Plaintiff v. Defendant State Supervisors)

141.     Plaintiff hereby incorporates by reference Paragraphs 1 through 140 as if fully restated herein at length.

142.     Defendant Pawlowski, Defendant Laufer, Defendant Young, and Defendant Reilly (collectively, "Defendant State Supervisors") acted under the color of state law and were state actors at all times relevant to the matters complained of herein.

143.     Defendant State Supervisors deprived Decedent of his rights and privileges secured under the Fourth and Fourteenth Amendments to the U.S. Constitution, which guarantees his right to be secure from unreasonable searches and seizures and the right to due process of the law.

144.    Decedent's injuries and damages were a direct and proximate result of Defendant State Supervisors' encouragement, toleration, ratification, and/or deliberate indifference to the patterns, practices and customs and/or to the need for the implementation of some, more or different training, supervision, investigation and/or discipline in the areas outlined above as outlined above.

145.    The actions of Defendant McKeon, Defendant Yingling and Defendant Zachariah resulted from and were taken pursuant to the patterns, practices and customs of Defendant State Supervisors, and/or the need for the implementation of some, more or different training, supervision, investigation and/or discipline by Defendant State Supervisors, in the areas outlined above.

146.    Defendant State Supervisors have approved and condoned the actions and procedures implemented and enforced by their individual police officers in this case and others.

147.    Defendant McKeon's and Defendant Yingling's application of unwarranted, unlawful and excessive force and violence upon Decedent, while in the custody of the Pennsylvania State Police, and Defendant Zachariah's interference with Decedent's medical care caused Decedent to suffer severe physical injuries and harm resulting in death and was the result of patterns, practices and customs of Defendant State Supervisors and/or the need for the implementation of some, more or different training, supervision, investigation and/or discipline by Defendant State Supervisors, in the areas outlined above.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant State Supervisors and grant him all appropriate relief, including, but

not limited to, compensatory damages, court costs, punitive damages, attorney fees and all other relief as it deems appropriate under 42 U.S.C. §§ 1983, 1988 and under Pennsylvania law.

## COUNT VI – CIVIL CONSPIRACY
### (Plaintiff v. Defendant McKeon and Defendant Yingling)

148.     Plaintiff hereby incorporates by reference Paragraphs 1 through 147 as if fully restated herein at length.

149.     Defendant McKeon and Defendant Yingling acted under the color of state law and were state actors at all times relevant to the matters complained of herein.

150.     As detailed above, Defendant McKeon and Defendant Yingling agreed with intent to do an unlawful act on Decedent, thereby entering into a conspiracy to violate the Decedent's rights guaranteed him under Pennsylvania law.

151.     As detailed above, Defendant McKeon and Defendant Yingling performed overt acts in furtherance of the conspiracy, including but not limited to, reaching an agreement or meeting of the minds to subject Decedent to excessive force and attempted to conceal amount of force exerted by interfering with the medical treatment given to Decedent.

152.     As detailed above, the conspiracy directly and proximately resulted in harm to Decedent, including the deprivation of his rights and privileges under Pennsylvania law.

153.     As a direct and proximate result of the malicious, intentional and/or reckless actions of Defendant McKeon and Defendant Yingling, Decedent suffered severe physical injuries and harm resulting in death.

154.     The actions of Defendant McKeon and Defendant Yingling, in conspiring to deprive Decedent of his rights under Pennsylvania law, were so intentional, negligent,

recklessly indifferent, willful, wanton, malicious and outrageous that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant McKeon and Defendant Yingling and grant him all appropriate relief, including, but not limited to, compensatory damages, punitive damages, court costs, attorney fees and all other relief as it deems appropriate.

## COUNT VII – ASSAULT AND BATTERY
### (Plaintiff v. Defendant McKeon and Defendant Yingling)

155.    Plaintiff hereby incorporates by reference Paragraphs 1 through 154 as if fully restated herein at length.

156.    Plaintiff hereby incorporates by reference Paragraphs 1 through 125 as if fully restated herein at length.

157.    Defendant McKeon and Defendant Yingling acted under the color of state law and were state actors at all times relevant to the matters complained of herein.

158.    At all times relevant to the matter complained of herein, Defendant McKeon and Defendant Yingling acted individually and/or jointly and severally with intent to cause immediate fear of harmful or offensive touching and contact and with intent to cause harmful and/or offensive touching and contact with Decedent proximately causing considerable fear, touching, pain, injuries and harm.

159.    The actions of Defendant McKeon and Defendant Yingling were intentional, recklessly indifferent, willful, wanton, malicious and outrageous.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant McKeon and Defendant Yingling and grant him all appropriate relief,

including, but not limited to, compensatory damages, punitive damages, court costs,

attorney fees and all other relief as it deems appropriate.

## COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff v. Defendant McKeon, Defendant Yingling Defendant Zachariah, Defendant Pawlowski, Defendant Laufer, Defendant Young, and Defendant Reilly)

160.     Plaintiff hereby incorporates by reference Paragraphs 1 through 159 as if

fully restated herein at length.

161.     Defendant McKeon, Defendant Yingling Defendant Zachariah, Defendant

Pawlowski, Defendant Laufer, Defendant Young, and Defendant Reilly  (collectively,

"Defendant State Police Officers")  acted under the color of state law at all times

relevant to the matters complained of herein.

162.     The conduct of Defendant State Police Officers described herein was

extreme and outrageous and was designed to intentionally or recklessly cause severe

emotional distress to Decedent.

163.     As a direct and proximate result of the aforementioned conduct of

Defendant State Police Officers, Decedent suffered severe emotional distress.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment

against Defendant State Police Officers and grant him all appropriate relief, including,

but not limited to, compensatory damages, punitive damages, court costs, attorney fees

and all other relief as it deems appropriate.

## COUNT IX – NEGLIGENCE
### (Plaintiff v. Defendant State Supervisors)

164.     Plaintiff hereby incorporates by reference Paragraphs 1 through 163 as if

fully restated herein at length.

165.     Defendant Pawlowski, Defendant Laufer, Defendant Young, and Defendant Reilly (collectively, "Defendant State Supervisors") acted under the color of state law at all times relevant to the matters complained of herein.

166.     Defendant State Supervisors owed Decedent, a lawful resident of Pennsylvania, a duty of care not to act negligently or recklessly in the training they provide to Pennsylvania Police Officers in how to treat individuals.

167.     The failures of Defendant State Supervisors to adequately supervise, train, and discipline Pennsylvania Police Officers, including Defendant McKeon, Defendant Yingling and Defendant Zachariah amounted to a deliberate indifference to the rights of persons, including Decedent, with whom Defendant McKeon, Defendant Yingling and Defendant Zachariah came into contact during the course of their original duties as Police Officers.

168.     The failures of Defendant State Supervisors to properly train and supervise Pennsylvania Police Officers, including Defendant McKeon, Defendant Yingling and Defendant Zachariah, produced an environment that not only tolerated but condoned the actions and procedures implemented by Defendant McKeon, Defendant Yingling and Defendant Zachariah that caused Decedent to suffer severe physical injuries and harm resulting in death.

169.     The policies, practices and/or customs of Defendant State Supervisors caused a deprivation of Decedent's rights and privileges secured to him by the U.S. Constitution, Pennsylvania Constitution and federal and state law.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant State Supervisors and grant him all appropriate relief, including, but

not limited to, punitive damages, compensatory damages, court costs, attorney fees and all other relief as it deems appropriate.

## COUNT X – PROFESSIONAL LIABILITY
### (Plaintiff v. Defendant Nurse Salvucci)

170.    Plaintiff hereby incorporates by reference Paragraphs 1 through 169 as if fully restated herein at length.

171.    Defendant Nurse Salvucci owed Hakim Jackson a duty to have the same knowledge and skill and to use the same care normally used in the medical profession when she rendered medical care to Hakim Jackson.

172.    Defendant Nurse Salvucci breached this duty through her negligence, carelessness and reckless indifference as set forth herein.

173.    As a direct and proximate result of the negligence, carelessness and reckless indifference of Defendant Dr. Varacalli as set forth herein, Hakim Jackson suffered severe physical injuries and harm resulting in death.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant Nurse Salvucci and award Plaintiff all appropriate relief, including punitive damages, Pennsylvania Rule of Civil Procedure 238 damages and interest.

## COUNT XI – PROFESSIONAL LIABILITY
### (Plaintiff v. Defendant Dr. Varacalli)

174.    Plaintiff hereby incorporates by reference Paragraphs 1 through 173 as if fully restated herein at length.

175.    Defendant Dr. Varacalli owed Hakim Jackson a duty to have the same knowledge and skill and to use the same care normally used in the medical profession when she rendered medical care to Hakim Jackson.

176.    Defendant Dr. Varacalli breached this duty through her negligence, carelessness and reckless indifference as set forth herein.

177.    As a direct and proximate result of the negligence, carelessness and reckless indifference of Defendant Dr. Varacalli as set forth herein, Hakim Jackson suffered severe physical injuries and harm resulting in death.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant Dr. Varacalli and award Plaintiff all appropriate relief, including punitive damages, Pennsylvania Rule of Civil Procedure 238 damages and interest.

### COUNT XII – PROFESSIONAL LIABILITY
#### (Plaintiff v. Defendant Dr. Kiliddar)

178.    Plaintiff hereby incorporates by reference Paragraphs 1 through 177 as if fully restated herein at length.

179.    Defendant Dr. Kiliddar owed Hakim Jackson a duty to have the same knowledge and skill and to use the same care normally used in the medical profession while Hakim Jackson was under his/her care.

180.    Defendant Dr. Kiliddar breached this duty through his/her negligence, carelessness and reckless indifference as set forth herein.

181.    As a direct and proximate result of the negligence, carelessness and reckless indifference of Defendant Dr. Kiliddar as set forth herein, Hakim Jackson suffered severe physical injuries and harm resulting in death.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant Dr. Kiliddar and award Plaintiff all appropriate relief, including punitive damages, Pennsylvania Rule of Civil Procedure 238 damages and interest.

### COUNT XIII – VICARIOUS LIABILITY

**(Plaintiff v. Defendant Crozer-Chester)**

182.      Plaintiff hereby incorporates by reference Paragraphs 1 through 181 as if fully restated herein at length.

183.      Defendant Crozer-Chester is vicariously liable for all of the acts and omissions committed by its agents, servants and employees, including Defendant Nurse Salvucci, Defendant Dr. Varacalli and Defendant Dr. Kiliddar, as set forth herein.

184.      Defendant Crozer-Chester is vicariously liable for all damages and harm incurred by Hakim Jackson as a direct and proximate cause of the negligence, carelessness and reckless indifference of Defendant Crozer-Chester's agents, servants and employees, including Defendant Nurse Salvucci, Defendant Dr. Varacalli and Defendant Dr. Kiliddar, as set forth herein.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant Crozer-Chester and award Plaintiff all appropriate relief, including punitive damages, Pennsylvania Rule of Civil Procedure 238 damages and interest.

## COUNT XIV – CORPORATE NEGLIGENCE
**(Plaintiff v. Defendant Crozer-Chester)**

185.      Plaintiff hereby incorporates by reference Paragraphs 1 through 184 as if fully restated herein at length.

186.      Defendant Crozer-Chester owed Hakim Jackson a duty to ensure his safety and well-being while he was under the care of Defendant Crozer-Chester.

187.      Defendant Crozer-Chester breached its duty of care through its negligence, carelessness and reckless indifference as set forth herein, which was a substantial factor in bringing about the harm to Hakim Jackson.

188.     As a direct and proximate result of the negligence, carelessness and reckless indifference of Defendant Crozer-Chester as set forth herein, Hakim Jackson suffered severe physical injuries and harm resulting in death.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant Crozer-Chester and award Plaintiff all appropriate relief, including punitive damages, Pennsylvania Rule of Civil Procedure 238 damages and interest.

### . COUNT XV – WRONGFUL DEATH
**(Naji Muhammad as Administratrix of the Estate of HAKIM JACKSON v. All Defendants)**

189.     Plaintiff hereby incorporates by reference Paragraphs 1 through 188 as if fully restated herein at length.

190.     Plaintiff is the Administratrix of the Decedent's estate and brings this action by virtue of 42 Pa. C.S.A. 8301 and Pa.R.C.P. 2202 and claims all benefits of the Wrongful Death Act on behalf of himself and all other persons entitled to recover under the law and more specifically the reasonable hospital, nursing, medical, funeral expenses, and expenses of administration necessitated by reason of the injuries and death of Decedent.

191.     By reason of the death of Hakim Jackson, his Administratrix, who is his father, and his son Hakim Wells, who survived him, suffered great pecuniary loss as well as funeral expenses and expenses of administration necessitated by reason of the injuries and death of Decedent.

192.     Prior to his death and because of the actions of the Defendants as described more fully herein, Hakim Jackson underwent great pain, suffering and anxiety including conscious knowledge of his impending death.

193.     Hakim Jackson was hospitalized from the date of his severe beating until the date of his death and was aware of his injuries and suffered greatly.

194.     By reason of Hakim Jackson's death, Hakim Wells, his surviving child, permanently lost Hakim Jackson's guidance and tutelage.

195.     Each Defendant is liable to Plaintiff for the damages stated herein because their actions, as described more fully herein, caused the death of Hakim Jackson and loss to his Estate.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all Defendants and grant him all appropriate relief, including, but not limited to, compensatory damages, punitive damages and all other relief permitted under the Wrongful Death Act.

### COUNT XVI – SURVIVAL
**(Naji Muhammad as Administratrix of the Estate of HAKIM JACKSON v. All Defendants)**

196.     Plaintiff hereby incorporates by reference Paragraphs 1 through 195 as if fully restated herein at length.

197.     Plaintiff also brings this action on behalf of the Estate of Hakim Jackson, deceased, under 42 Pa. C.S.A. §8392 and 20 Pa. C.S.A. §3371, and claims all benefits of the Survival Act on behalf of himself and all other persons entitled to recover under law.

198.     Plaintiff claims on behalf of the Estate all the damages suffered by the Estate by reason of Hakim Jackson's death, including but not limited to, the anxiety, fear, pain, suffering and conscious awareness of impending death suffered by Hakim Jackson between the moment of injury and the moment of his death.

199.     Plaintiff claims on behalf of the Estate all the damages suffered by the Estate by reason of Hakim Jackson's death, including but not limited to, medical expenses, and the loss of future earnings and earning capacity suffered by Hakim Jackson.

200.     Each Defendant is liable to Plaintiff for the damages stated herein because their actions, as discussed more fully herein, caused the death of Hakim Jackson and loss to his Estate.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all defendants and grant him all appropriate relief, including, but not limited to, punitive damages, compensatory damages, and all other relief permitted under the Survival Act.

### COUNT XVII – FEDERAL CIVIL RIGHTS VIOLATIONS 42 U.S.C. § 1983
**(Plaintiff v. Defendant McKeon, Defendant Yingling Defendant Zachariah, Defendant Pawlowski, Defendant Laufer, Defendant Young, and Defendant Reilly)**

201.     Plaintiff hereby incorporates by reference Paragraphs 1 through 200 as if fully restated herein at length.

202.     Defendant McKeon, Defendant Yingling Defendant Zachariah, Defendant Pawlowski, Defendant Laufer, Defendant Young, and Defendant Reilly  (collectively, "Defendant State Police Officers") acted under the color of state law and were state actors at all times relevant to the matters complained of herein.

203.     As detailed above, as a direct and proximate result of the malicious, intentional and reckless actions of Defendant State Police Officers, Decedent suffered severe physical injuries and harm resulting in death.

204.     As a result of Decedent's death, Plaintiff suffered harm, including the deprivation of his right to and liberty interest in Decedent's life due to Plaintiff's interest in the custody and maintenance of his family.

205.     Plaintiff, the father of Decedent, is entitled to recover for the loss of interest in his son's life.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant State Police Officers and grant him all appropriate relief, including, but not limited to, compensatory damages, punitive damages, court costs, attorney fees and all other relief as it deems appropriate under 42 U.S.C. §§ 1983, 1988 and under Pennsylvania law.

Respectfully submitted,

TUCKER LAW GROUP, LLC

Dated: December 1, 2011

By:     Joe H. Tucker, Jr., Esquire
        Yvonne Barnes Montgomery, Esquire
        Kathleen Kirkpatrick, Esquire
        Riley H. Ross III, Esquire
        One Penn Center at Suburban Station
        1617 JFK Blvd., Suite 1700
        Philadelphia, PA 19103
        (215) 875-0609

# EXHIBIT "E"

セ



Four Penn Center
1600 John F Kennedy Blvd.
Philadelphia, PA 19103
215-587-1000 Main
215-587-1444 Fax
www.postschell.com

Amalia V. Romanowicz

aromanowicz@postschell.com
215-587-1193 Direct
215-320-4716 Fax
File #: 149532

October 24, 2011

<u>Via Fax</u>
Kathleen Kirkpatrick, Esquire
Tucker Law Group, LLC
One Penn Center at Suburban Station
1617 John F. Kennedy Boulevard, Suite 1700
Philadelphia, PA 19103

**RE:** **Naji Mohammad, Ind. and as Admx. of the Estate of Hakim Jackson, Dec'd v. Crozer Chester Medical Center, et al**

Dear Kathleen:

Please be advised that I have authority to accept service on behalf of Dr. Hussein A. Kiliddar, and to agree to his substitution in place of "John Doe Attending" in this matter. Please forward the Amended Complaint to my attention once he has been substituted as the named defendant. Thank you.

Very truly yours,

Amalia V. Romanowicz

AVR/sg
cc:   Randall J. Henzes, Esquire
      Joseph J. Santarone, Jr., Esquire
      Michael P. Laffey, Esquire

      (via fax)

# EXHIBIT "F"



## TUCKER LAW GROUP

November 23, 2011

Dr. Hussein Kiliddar
c/o Amalia V. Romanowicz, Esquire
Post & Schell P.C.
Four Penn Center
1600 John F. Kennedy Boulevard
Philadelphia, PA 19103

    Re:   **Mohammad v. Crozer-Chester Medical Center, et al.;**
          **Civ. No. 11-5004 (E.D. Pa.)**

Dear Dr. Kiliddar:

       Please be advised that this office represents the plaintiff in the above-referenced
lawsuit arising from the death of your former patient, Hakim Jackson, on August 16,
2009, at Crozer-Chester Medical Center.  Enclosed please find the Complaint and the
Amended Complaint that have been filed in this lawsuit.  You are the "John Doe
Attending" identified in the Complaint and Amended Complaint.  You will be named as
a defendant in this lawsuit.  You will be substituted in each instance in which "John Doe
Attending" is referred to in the attached Complaint and Amended Complaint.  Therefore
all allegations against "John Doe Attending" in the Complaint and Amended Complaint
are directly addressed to you and will be lodged against you.

                          Very truly yours,

                          Kathleen Kirkpatrick

KK/dg
Enclosures


TUCKER
LAW
GROUP

November 16, 2011

**VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**
Trooper Joseph Yingling
Troop K, Media, PA Barracks
1342 W. Baltimore Pike
Media, PA 19063

    **Re:   Mohammad v. John Doe Pennsylvania State Police Supervisors, et al.**
        **Civ. No. 11-5004 (E.D. Pa.)**

Dear Trooper Yingling:

      Please be advised that this office represents the Plaintiff in the above referenced matter. Enclosed please find the Complaint and the Amended Complaint that have been filed in this lawsuit. This correspondence puts you on Notice of the existence and nature of this lawsuit. By this letter, you are also placed on Notice that you may be named as a Defendant in this litigation.

                         Very truly yours,

                         Riley H. Ross III

RHR/md
Enclosure

cc:    Joseph J. Santarone, Jr., Esquire (via first class mail, w/o enclosure)
       Amalia V. Romanowicz, Esquire (via first class mail, w/o enclosure)



**TUCKER**
**LAW**
**GROUP**

November 15, 2011

Trooper Michael McKeon
c/o Randall Henzes, Esquire
Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107

    Re:    **Mohammad v. John Does Pennsylvania State Police Supervisors et al.,**
           **Civ. No. 11-5004 (E.D. Pa.)**

Dear Trooper McKeon:

    Please be advised that this office represents the Plaintiff in the above referenced matter. Enclosed please find the Complaint and the Amended Complaint that have been filed in this lawsuit. This correspondence puts you on Notice of the existence and nature of this lawsuit. By this letter, you are also placed on Notice that you may be named as a Defendant in this litigation.

                        Very truly yours,

                        Riley H. Ross III

RHR/md
Enclosures

cc:   Joseph J. Santarone, Jr., Esquire (via first class mail, w/o enclosure)
      Amalia V. Romanowicz, Esquire (via first class mail, w/o enclosure)

*"Making Results Happen"*

One Penn Center at Suburban Station • 1617 JFK Boulevard, Suite 1700 • Philadelphia, PA 19103
Tel 215.875.0609 • Fax 215.875.8143
www.tlgattorneys.com


TUCKER
LAW
GROUP

December 1, 2011

**VIA EMAIL & U.S. MAIL**
Trooper Jason Zachariah
c/o Randall Henzes, Esq.
Randall J. Henzes, Esquire
Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107

    Re:    **Mohammad v. John Doe Pennsylvania State Police Supervisors, et al.**
           **Civ. No. 11-5004 (E.D. Pa.)**

Dear Trooper Zachariah:

    Please be advised that this office represents the Plaintiff in the above referenced matter. Enclosed please find the Complaint and the Amended Complaint that have been filed in this lawsuit. This correspondence puts you on Notice of the existence and nature of this lawsuit. By this letter, you are also placed on Notice that you may be named as a Defendant in this litigation.

                            Very truly yours,

                            Riley H. Ross III

RHR/ka
Enclosure

cc:    Joseph J. Santarone, Jr., Esquire (via first class mail, w/o enclosure)
       Amalia V. Romanowicz, Esquire (via first class mail, w/o enclosure)



TUCKER
LAW
GROUP

November 16, 2011

**VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**
Frank E. Pawlowski
Former Pennsylvania State Police Commissioner
112 Biddle Drive
Exton, PA 19341

    **Re:   Mohammad v. John Doe Pennsylvania State Police Supervisors, et al.**
         **Civ. No. 11-5004 (E.D. Pa.)**

Dear Mr. Pawlowski:

       Please be advised that this office represents the Plaintiff in the above referenced matter. Enclosed please find the Complaint and the Amended Complaint that have been filed in this lawsuit. This correspondence puts you on Notice of the existence and nature of this lawsuit. By this letter, you are also placed on Notice that you may be named as a Defendant in this litigation.

Very truly yours,

Riley H. Ross III

RHR/md
Enclosure

cc:   Joseph J. Santarone, Jr., Esquire (via first class mail, w/o enclosure)
      Amalia V. Romanowicz, Esquire (via first class mail, w/o enclosure)

*"Making Results Happen"*
One Penn Center at Suburban Station • 1617 JFK Boulevard, Suite 1700 • Philadelphia, PA 19103
Tel 215.875.0609 • Fax 215.559.6209
*www.tlgattorneys.com*



TUCKER
LAW
GROUP

November 29, 2011

**VIA UPS OVERNIGHT**
Major John W. Laufer, III
175 East Hershey Park Drive
Hershey, PA 17033

Re:   **Mohammad v. John Doe Pennsylvania State Police Supervisors, et al.**
      **Civ. No. 11-5004 (E.D. Pa.)**

Dear Major Laufer:

        Please be advised that this office represents the Plaintiff in the above referenced
matter.  Enclosed please find the Complaint and the Amended Complaint that have
been filed in this lawsuit.  This correspondence puts you on Notice of the existence and
nature of this lawsuit.  By this letter, you are also placed on Notice that you may be
named as a Defendant in this litigation.

                                       Very truly yours,

                                       Riley H. Ross III

JEC/ka
Enclosure

cc:    Joseph J. Santarone, Jr., Esquire (via first class mail, w/o enclosure)
       Amalia V. Romanowicz, Esquire (via first class mail, w/o enclosure)

*"Making Results Happen"*
One Penn Center at Suburban Station  •  1617 JFK Boulevard, Suite 1700  •  Philadelphia, PA 19103
Tel  215.875.0609  •  Fax  215.559.6209
www.tlgattorneys.com



November 16, 2011

**VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**
Lieutenant David Young
Troop F Montoursville
Commander of Criminal Investigation
899 Cherry Street
Montoursville, PA 17754

    **Re:   Mohammad v. John Doe Pennsylvania State Police Supervisors, et al.
         Civ. No. 11-5004 (E.D. Pa.)**

Dear Lieutenant Young:

      Please be advised that this office represents the Plaintiff in the above referenced matter. Enclosed please find the Complaint and the Amended Complaint that have been filed in this lawsuit. This correspondence puts you on Notice of the existence and nature of this lawsuit. By this letter, you are also placed on Notice that you may be named as a Defendant in this litigation.

                Very truly yours,

                Riley H. Ross III

RHR/md
Enclosure

cc:   Joseph J. Santarone, Jr., Esquire (via first class mail, w/o enclosure)
     Amalia V. Romanowicz, Esquire (via first class mail, w/o enclosure)



TUCKER
LAW
GROUP·

November 15, 2011

Sgt. Robert Reilly
Troop K, Media, PA Barracks
1342 W. Baltimore Pike
Media, PA 19063

    **Re:**   **Mohammad v. John Doe Pennsylvania State Police Supervisors, et al.**
        **Civ. No. 11-5004 (E.D. Pa.)**

Dear Sergeant Reilly:

      Please be advised that this office represents the Plaintiff in the above referenced matter.  Enclosed please find the Complaint and the Amended Complaint that have been filed in this lawsuit.  This correspondence puts you on Notice of the existence and nature of this lawsuit.  By this letter, you are also placed on Notice that you may be named as a Defendant in this litigation.

                    Very truly yours,

                    Riley H. Ross III

RHR/md
Enclosure

cc:   Joseph J. Santarone, Jr., Esquire (via first class mail, with enclosure)
      Amalia V. Romanowicz, Esquire (via first class mail, with enclosure)

*"Making Results Happen"*
One Penn Center at Suburban Station • 1617 JFK Boulevard, Suite 1700 • Philadelphia, PA 19103
Tel  215.875.0609 • Fax  215.875.8143
www.tlgattorneys.com